# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| MOSAID Technologies Incorporated, | § | |
| | § | |
| Plaintiff, | § | Case No. 2:11-cv-179 |
| | § | |
| v. | § | |
| | § | |
| Dell, Inc., | § | Jury Trial Demanded |
| Research in Motion Corporation, | § | |
| Research in Motion, Ltd., | § | |
| Datalogic S.p.A., | § | |
| Informatics Holdings, Inc., | § | |
| Wasp Barcode Technologies, Ltd., | § | |
| Venture Research, Inc., | § | |
| Huawei Technologies Co., Ltd., | § | |
| Huawei Technologies USA Inc., | § | |
| Huawei Device USA Inc., | § | |
| Futurewei Technologies, Inc., | § | |
| Murata Electronics North America, Inc., | § | |
| Murata Manufacturing Co., Ltd., | § | |
| Murata Wireless Solutions, | § | |
| Sychip, Inc., | § | |
| Wistron Corporation, | § | |
| Wistron LLC, | § | |
| SMS Infocomm Corporation, | § | |
| Wistron Infocomm (Texas) Corporation, | § | |
| Wistron Infocomm Technology (America) | § | |
| Corporation, | § | |
| Wistron NeWeb Corporation, | § | |
| ASUSTeK Computer Inc., | § | |
| Asus Computer International, Inc., | § | |
| Lexmark International, Inc., | § | |
| Canon Inc., | § | |
| Canon U.S.A., Inc., | § | |
| Digi International Inc., | § | |
| Intel Corporation, | § | |
| Atheros Communications, Inc., | § | |
| Marvell Semiconductor, Inc., | § | |
| Realtek Semiconductor, | § | |
| Ralink Technology Corporation, | § | |
| CSR plc, | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff MOSAID Technologies Incorporated ("MOSAID") files this Original Complaint for patent infringement against Defendants Dell, Inc. ("Dell"); Research in Motion Corporation and Research in Motion, Ltd. (collectively, "RIM"); Datalogic S.p.A., Informatics Holdings, Inc., and Wasp Barcode Technologies, Ltd. (collectively, "Wasp"); Venture Research, Inc. ("Venture Research"); Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device USA Inc., and Futurewei Technologies, Inc. (collectively, "Huawei"); Murata Electronics North America, Inc., Murata Manufacturing Co., Ltd., Murata Wireless Solutions, and Sychip, Inc., (collectively, "Murata"); Wistron Corporation, Wistron LLC, SMS Infocomm Corporation, Wistron Infocomm (Texas) Corporation, Wistron Infocomm Technology (America) Corporation, and Wistron NeWeb Corporation (collectively, "Wistron"); ASUSTeK Computer Inc. and ASUS Computer International, Inc. (collectively, "ASUS"); Lexmark International, Inc. ("Lexmark"); Canon Inc. and Canon U.S.A., Inc. (collectively, "Canon"); Digi International Inc. ("Digi"); Intel Corporation ("Intel"); Atheros Communications, Inc. ("Atheros"); Marvell Semiconductor, Inc. ("Marvell"); Realtek Semiconductor ("Realtek"); Ralink Technology Corporation ("Ralink"); and CSR plc ("CSR") (collectively, "Defendants") for infringement of United States Patent Numbers 5,131,006 ("the '006 Patent"); 5,151,920 ("the '920 Patent"); 5,422,887 ("the '887 Patent"); 5,706,428 ("the '428 Patent"); 6,563,786 ("the '786 Patent"); and 6,992,972 ("the '972 Patent") (collectively, the "Patents-in-Suit") pursuant to 35 U.S.C. § 271.

## NATURE OF THE ACTION

1.      This is an action brought by MOSAID against Defendants for Defendants' infringement of the Patents-in-Suit.

2.      The Institute of Electrical and Electronics Engineers ("IEEE") has developed

standards for implementing wireless local area network ("WLAN" or "WiFi") computer communications in certain frequency bands.

3.     Communications within said frequency bands has expanded over time and includes, without limitation, communications compliant with the 802.11a, 802.11b, 802.11g, and 802.11n standards (collectively, "802.11 standards").

4.     MOSAID is the assignee of all rights and interest in the Patents-in-Suit, which cover products that operate in compliance with IEEE 802.11 standards.

5.     Defendants make, use, sell, offer for sale, import into the United States, and/or export at least one product that complies with or implements the IEEE 802.11 standards.

6.     Accordingly, MOSAID seeks remedies for Defendants' infringement of at least one claim from each of the Patents-in-Suit.

## THE PARTIES

7.     Plaintiff MOSAID Technologies Incorporated is a corporation subject to the laws of Canada with its principal place of business at 11 Hines Road, Suite 203, Ottawa, Ontario Canada K2K 2X1.  Plaintiff MOSAID's United States principal place of business is located at 101 E. Park Blvd., Suite 600, Plano, Texas  75074.

8.     Upon information and belief, Defendant Dell is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 Dell Way, Round Rock, Texas 78682-2222.

9.     Dell designs, markets, uses, manufactures, imports, sells, and/or offers for sale computers (including without limitation laptop computers and notebook computers, and tablet computers), as well as routers (including, without limitation, Dell TrueMobile 2300 Wireless Broadband   Router,   Model   WX-5565D), printers (including, without limitation, V715W

Printer, 5330dn Monochrome Laser Printer, Dell P713W All In One Photo Printer- WiFi, Print, Copy, Scan,  Dell V515W All In One (Product) Red Printer- Wifi, Print, Copy, Scan, Fax,  Dell 1355cnw Color LED Multi-function Laser-Class Printer,  Dell V313W All In One Printer- WiFi, Print, Copy, Scan,    Dell P513W All In One Printer- WiFi, Print, Copy, Scan, ), projectors (including, without limitation, Dell S300wi Short Throw Wireless Interactive Projector,   Dell S300w Short Throw Wireless Projector,  Dell 4610X Wireless Plus Mainstream Projector), Dell Streak 5,  Dell Streak 7 Tablet, Dell Venue Smartphone, Dell Venue Pro Windows Phone 7 Smartphone, and adapters (including, without limitation, Wireless 1490 802.11a/g Mini PCI Card, 1501 802.11n wireless card, Wireless 1505 PCI Express WLAN Mini-Card, 2.4/5 GHz Wireless 1505 PCI Express Internal WLAN Half-Height Mini-Card, Wireless 1510 PCI Express Internal WLAN Half-Height Mini-Card, Wireless 1520 802.11n Half Mini-Card, Wireless 5300 PCI Express Internal Half-Height Mini-Card, 4965AGN Wireless-N PCI Express Mini-Card, 4965AGN PCI Express WLAN Mini-Card, Wireless 4965 PCI Express WLAN Mini-Card, Wireless 3945 802.11a/g Mini PCI Express Card, Pro/Wireless 3945 802.11a/g PCIe Mini-Card, Wireless 1395 802.11b/g PCI Express Mini Card, Wireless 1395 802.11g PCI Express Mini Card , Wireless 1395 Internal PCI-Express Mini-Card, Wireless 1397 802.11b/g PCI Express Half-Height Mini Card, WiFi Link 5300 Wireless-Network Mini-Card, WiFi Link 5100 Wireless-N Half-Height Mini-Card, Multi-Protocol Card with Wireless Printer Adapter 3310 USB)  used and/or designed for use in computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Dell IEEE 802.11 devices").

10.    Dell is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for

sale Dell IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Dell may be served with process by serving its registered agent, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

11.     Upon information and belief, Defendant Research in Motion Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 122 W. John Carpenter Parkway, Suite 430, Irving, Texas 75039. Upon information and belief, Defendant Research In Motion, Ltd. is a corporation organized and existing under the laws of Ontario, Canada with a principal place of business at 295 Phillip Street, Waterloo, Ontario, Canada.  Upon information and belief, Research in Motion Corporation is a wholly owned subsidiary of Research In Motion, Ltd.

12.     RIM designs, markets, uses, manufactures, imports, sells, and/or offers for sale smart phones (including, without limitation, Torch, Style, Curve, Pearl, Bold, Storm) and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "RIM IEEE 802.11 devices").

13.     RIM is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale RIM IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  RIM may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

14.     Upon information and belief, Defendant Datalogic S.p.A., is a corporation organized and existing under the laws of Italy with its principal place of business at Via Candini, 2, 40012 Lippo di Calderara di Reno, Bologna, Italy.  Upon information and belief, Defendant

Informatics Holdings, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 1400 10th Street, Plano, Texas 75074.  Upon information and belief, Defendant Wasp Barcode Technologies, Ltd. is a corporation organized and existing under the laws of the United Kingdom with its principal place of business at 1400 10th Street, Plano, Texas 75074.  Upon information and belief, Wasp Barcode Technologies, Ltd. is a wholly owned subsidiary of Informatics Holdings, Inc., and Informatics Holdings, Inc. is wholly owned by Datalogic S.p.A.

15.     Wasp designs, markets, uses, manufactures, imports, sells, and/or offers for sale mobile computers (including, without limitation, Wasp WPA 1000 Mobile Computer, WPA1200wm Mobile Computer, WDT3200 Mobile Computer, Wasp WDT3250 Mobile Computer), and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Wasp IEEE 802.11 devices").

16.     Wasp is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Wasp IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Upon information and belief, Defendant Wasp Barcode Technologies, Ltd. is a wholly owned subsidiary of Informatics Holdings, Inc.  Upon information and belief, Datalogic S.p.A. is the parent of Informatics Holdings, Inc.  Wasp may be served with process by serving its registered agent, Capitol Corporate Services, Inc., at 800 Brazos, Suite 400, Austin, Texas 78701.

17.     Upon information and belief, Defendant Venture Research, Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 3001 Summit Ave., Suite 100, Plano, Texas 75074.

6

18.     Venture Research designs, markets, uses, manufactures, imports, sells, and/or offers for sale RFID (Radio Frequency Identification) products (including, without limitation, SlimTrak™ Intelligent UHF RFID Reader with Integrated Computer, SlimTrak™ UHF RFID Reader with Integrated Antennas, Document and Folder Desktop RFID Reader with a WiFi component and Ruggedized Forklift Readers), and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Venture Research IEEE 802.11 devices").

19.     Venture Research is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Venture Research IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Venture Research may be served with process by serving its registered agent, John Baker, 7141 Oakbrook Dr., Plano, Texas 75025.

20.     Upon information and belief, Defendant Huawei Technologies Co., Ltd. ("Huawei China") is a corporation organized and existing under the laws of China with its principal place of business at Bantian, Longgang District, Shenzhen 518129, P.R. China.  Upon information and belief, Defendant Huawei Technologies USA Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024.  Upon information and belief, Defendant Huawei Device USA Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024.  Upon information and belief, Defendant Futurewei Technologies, Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 5700 Tennyson Parkway, Suite #500 Plano,

Texas 75024.  Upon information and belief, Defendants Huawei Technologies USA Inc., Huawei

Device USA Inc., and Futurewei Technologies, Inc. are subsidiaries of Huawei China.

21.     Huawei designs, markets, uses, manufactures, imports, sells, and/or offers for sale

gateways (including, without limitation, Eudemon200E and HG523), network devices

(including, without limitation, Smart AX mt841), routers (including, without limitation, E5830

router, E5S, E5832, E585, E960, USG2110, USG2110AGWW, USG2110AW and

USG2110FW), access points (including, without limitation, 3G9WB), phones (including,

without limitation, Ascend), Ideos S7, X5 and X3 tablets, UM840, E585, U8500, and/or other

products used and/or designed for use in routers, personal computers, smart phones, game

consoles with wireless capability compliant with the IEEE 802.11 standards (hereinafter

"Huawei IEEE 802.11 devices").

22.     Huawei is doing business in the United States and, more particularly, in the

Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or

offering for sale Huawei IEEE 802.11 devices that infringe the patent claims involved in this

action or by transacting other business in this District.  Huawei Technologies USA Inc. and

Huawei Device USA Inc. may be served with process by serving its registered agent, CT

Corporation System, at 350 N. St. Paul St. Ste. 2900, Dallas, Texas 75201.  Futurewei

Technologies, Inc. may be served with process by serving its registered agent, Haibo Lin, at

1700 Alma Drive, Suite 100, Plano, Texas 75075.

23.     Upon information and belief, Defendant Murata Electronics North America, Inc.,

is a corporation organized and existing under the laws of Georgia with its principal place of

business at 2200 Lake Park Drive, Smyrna, Georgia, 30080.  Upon information and belief,

Defendant Murata Manufacturing Co., Ltd., is a corporation organized and existing under the

laws of Japan with its principal place of business at 10-1, Higashikotari 1-chrome, Nagaokakyo-shi, Kyoto 617-8555, Japan.  Upon information and belief, Defendant Sychip, Inc. d/b/a Murata Wireless Solutions is a division of Murata Electronics North America, Inc. and is a corporation organized and existing under the laws of Delaware with its principal place of business at 2805 North Dallas Parkway, Suite 400, Plano, TX 75093.  Upon information and belief, Murata Electronics North America, Inc. is a wholly owned subsidiary of Murata Manufacturing Co., Ltd.

24.     Murata designs, markets, uses, manufactures, imports, sells, and/or offers for sale semiconductors, and chip scale modules (including, without limitation, Wi-Fi™ 802.11 b/g/n, 802.11 b/g/n Bluetooth® v2.1 + EDR, and W-Fi 802.11 a/b/g/n Bluetooth® v2.1 + EDR) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Murata IEEE 802.11 devices").

25.     Murata is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Murata IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Sychip and Murata Wireless Solutions may be served with process by serving its' registered agent, Corporation Service Company d/b/a CSC- Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701.  Murata Electronics North America, Inc. may be served with process by serving its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Georgia 30092.

26.     Upon information and belief, Defendant Wistron Corporation is a corporation organized and existing under the laws of Taiwan with its principal place of business at 21F, 88,

Sec.1, Hsin Tai Wu Rd., Hsichih, Taipei Hsien 221, Taiwan, R.O.C. Upon information and belief, Defendant Wistron LLC, is a corporation organized under the laws of Wyoming with its principal place of business at 1790 N. Lee Trevino Dr., Suite 506, El Paso, Texas 79936. Upon information and belief, Defendant SMS Infocomm Corporation (formerly named Wistron Infocomm (Texas) Corporation), is a corporation organized and existing under the laws of Texas with its principal place of business at 4051 Freeport Parkway, Suite 200, Grapevine, Texas 76051. Upon information and belief, Defendant Wistron Infocomm (Texas) Corporation, is a corporation organized and existing under the laws of Texas with its principal place of business at 4051 Freeport Parkway, Suite 200, Grapevine, Texas 76051. Upon information and belief, Defendant Wistron Infocomm Technology (America) Corporation is a corporation organized and existing under the laws of Texas with its principal place of business at 800 Parker Square, Suite 285A, Flower Mound, Texas 75028. Upon information and belief, Wistron also has an office at 1104 S. Mays St., Round Rock, Texas 78664. Upon information and belief, Defendant Wistron NeWeb Corporation is a corporation organized and existing under the laws of Taiwan with its principal place of business at 20 Park Avenue II (or Yuanchiu 2nd Rd), Hsinchu Science Park, Hsinchu 308, Taiwan, R.O.C. Upon information and belief, SMS Infocomm Corporation and Wistron Infocomm (Texas) Corporation are wholly owned subsidiaries of Wistron Corporation, and Wistron NeWeb Corporation is also a subsidiary of Wistron Corporation. Upon information and belief, Wistron Infocomm Technology (America) Corporation is a wholly owned subsidiary of Wistron LLC, and Wistron Corporation is the parent of Wistron LLC.

27. Wistron designs, markets, uses, manufactures, imports, sells, and/or offers for sale adapters (including, without limitation, NeWeb 802.11b Wireless LAN PCI Card, CM9 802.11a 802.11b 802.11g Mini-PCI Wistron NeWeb mini-PCI, DRUC-U2 802.11g usb2 adapter,

DCMA-81, DCMA-82, DRMR-82, DNMA-92, DNMA-83, DNUA-81, SWA, DNXA-95, DNXA-93) and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Wistron IEEE 802.11 devices").

28.     Wistron is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Wistron IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  SMS Infocomm Corporation and Wistron Infocomm (Texas) Corporation may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.  Wistron Infocomm Technology (America) Corporation may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

29.     Upon information and belief, Defendant ASUSTeK Computer, Inc. is a corporation organized and existing under the laws of Taiwan with its principal place of business at 150 Li-Te Rd., Peitou, Taipei, 112, Taiwan, R.O.C. Upon information and belief, Defendant ASUS Computer International, Inc. is a corporation organized and existing under the laws of California with its principal place of business at 44370 Nobel Drive, Fremont, California 94538. Upon information and belief, Defendant ASUS Computer International, Inc. is a subsidiary of ASUSTeK Computer, Inc.

30.     ASUS designs, markets, uses, manufactures, imports, sells, and/or offers for sale laptops, integrated circuits and/or circuit boards (including, without limitation, Motherboards (P5B Deluxe/WiFi-AP, P5N32-SLI Premium/WiFiAP, P5N64 WS Professional, P5K3 Deluxe/WiFi-AP, P5K Deluxe/WiFi-AP, P5K-E/WiFi-AP, P5K Premium/WiFi-AP, P5E3

Deluxe/WiFi @n, M3A32-MVP Deluxe/WiFi-AP, P5Q3 Deluxe/WiFi-AP @n)), wireless routers (including, without limitation, WL-520GU Broad Range EZ Wireless Router, WL-500gP V2 Wireless Router, RT-N16 Wireless N Router, RT-N12 SuperSpeedN Wireless Router and RT-N13U Wireless N Router), Wireless PCI Adapter (including, without limitation, PCI-G31), ADSL Wireless Router (including, without limitation, WL-AM604g), notebooks (including, without limitation, B50A, B80A, F80Q, G51Vx, G71Gx, F50Sv, M60Vp, N70Sv, N90Sv, U6V, LAMBORGHINI VX5, S6F, F6Ve, U20A, K701O, K401N, K501J, N81Vp, G72 Series, and G73 Series), Eee PC Series (including, without limitation, 1215N, 1015PEM, 1001PX, EeeBox PC EB 1501P, EeeBox PC B201, and Eee Slate EP121), cellular phone (including, without limitation, GARMINfone), Internet Radio AIR, Skype Phone (including, without limitation, AiGuru S2, Eee Videophone AiGuru SV1 and Videophone Touch AiGuru SV1T), and/or other products used and/or designed for use in routers, personal computers, smart phones, game consoles with wireless capability compliant with the IEEE 802.11 standards (hereinafter "ASUS IEEE 802.11 devices").

31.     ASUS is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale ASUS IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  ASUS may be served with process by serving its registered agent, Godwin Yan, at 800 Corporate Way, Fremont, California 94539.

32.     Upon information and belief, Defendant Lexmark International, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 740 New Circle Road, Lexington, Kentucky 40550.

33.     Lexmark designs, markets, uses, manufactures, imports, sells, and/or offers for

sale printers (including, without limitation, Prevail Pro705, Interact S605, S816 Genesis, C544DW, C734DW, E460DW, Z2420, S305, S605, S405, S505, PRO901, PRO905, PRO705, PRO205, S815, X364DW, X466DWE, X544DW), adapters (including, without limitation, Lexmark 802.11b Wireless Print Adapter, N2050 802.11b/g Wireless Network Card), print servers (including, without limitation, N4050e 802.11g Wireless Print Server, C925 MarkNet N8250 802.11 b/g/n Wireless Print Server, Marknet N8150 802.11 b/g/n Wireless Print Server) used and/or designed for use in printers (including, without limitation, X646dte, X5075 Professional, X646e), and/or other products (including, without limitation, Internal MarkNet™ N8050 802.11g Wireless), and/or other products, with wireless capability compliant with the IEEE 802.11 standards ("Lexmark IEEE 802.11 devices").

34.     Lexmark is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Lexmark IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Lexmark may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

35.     Upon information and belief, Defendant Canon Inc. is a corporation organized and existing under the laws of Japan with its principal place of business at 30-2, Shimomaruko 3-chome, Ohta-ku, Tokyo 146-8501, Japan.   Upon information and belief, Defendant Canon U.S.A., Inc. is a wholly owned subsidiary of Canon Inc., and is a corporation organized and existing under the laws of New York with its principal place of business at One Canon Plaza, Lake Success, New York 11042.

36.     Canon designs, markets, uses, manufactures, imports, sells, and/or offers for sale

printers (including, without limitation, PIXMA MX870 Wireless All-In-One Printer, PIXMA MP495 Wireless, PIXMA MG5220 Wireless, PIXMA MG6120 Wireless, PIXMA MP990 Wireless, PIXMA MG8120 Wireless, PIXMA MX410 with PP-201, PIXMA MP800R, PIXMA iP5200R, PIXMA iP4000R, PIXMA MP980, PIXMA MP620, PIXMA MX860, PIXMA MP640, PIXMA MPR640R, PIXMA MP620B, PIXMA MX340, PIXMA MX350, Powershot SD430), transmitters (including, without limitation, WFT-E1, WFT-E2 IIA, WFT-E4 IIA, WFT-E5A), and/or other products (including, without limitation, FS-CV 802.11G Dongle), and/or other products, with wireless capability compliant with the IEEE 802.11 standards ("Canon IEEE 802.11 devices").

37.     Canon is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Canon IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Canon may be served with process by serving its registered agent, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

38.     Upon information and belief, Defendant Digi International Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 11001 Bren Road East, Minnetonka, MN 55343.

39.     Digi designs, markets, uses, manufactures, imports, sells, and/or offers for sale modules (including, without limitation, Digi Connect ME®, ConnectCore i.MX51/ Wi-i.MX51, ConnectCore i.MX53/ Wi-i.MX53, ConnectCore Wi-9C, ConnectCore Wi-9M 2443, ConnectCore Wi-9P 9215, Connect Wi-Wave, Connect Wi-EM, Digi Connect® Wi-ME, RabbitCore® RCM5400W Series, MiniCore® RCM6700 Series, MiniCore® RCM5600W

14

Series), routers and/or gateways (including, without limitation, Digi TransPort® DR with a WiFi option, Digi TransPort® WR Family, ConnectPort® WAN Family, ConnectPort® X5, ConnectPort X2, X4, X8), and/or other products (including, without limitation, ConnectPort® TS W, PortServer TS W MEI, Digi Connect® Wi-SP, SBC BL4S200 Series) with wireless capability compliant with the IEEE 802.11 standards ("Digi IEEE 802.11 devices").

40.   Digi is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Digi IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.   Digi may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul St., Suite 2900, Dallas Texas 75201.

41.   Upon information and belief, Defendant Intel is a corporation organized and existing under the laws of Delaware with its principal place of business at 2200 Mission College Blvd., Santa Clara, California 95054-1549.

42.   Intel designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, Intel® WiFi Products such as Intel® Centrino® Advanced-N + WiMax 6250, Intel® Centrino® Advanced-N 6205, Intel® Centrino® Advanced-N 6230, Intel® Centrino® Ultimate-N 6300 and Intel® Centrino® Advanced-N 6200 products, Intel® Centrino® Advanced-N + WiMax 6150, Intel® Centrino® Wireless-N 100,  Intel® Centrino® Wireless-N 1000, Intel® Centrino® Wireless-N 130,  Intel® Centrino® Wireless-N 1030, Intel® PRO/Wireless 2200BG Network Connection, Intel® PRO/Wireless 2915ABG Network Connection, Intel® PRO/Wireless 3945ABG Network Connection, Intel® PRO/Wireless 2011 LAN Access Point, Intel® PRO/Wireless 2011B LAN Access Point, Intel® PRO/Wireless 2011 LAN PC Card, Intel Pro/Wireless 2100 LAN MiniPCI

15

Adapters Types 3B & 3A, Intel® WiFi Link 5300 and Intel® WiFi Link 5100 products, Intel® WiMax/WiFi Link 5350 and Intel® WiMax/WiFi Link 5150 products, and Intel® Wireless WiFi Link 4965AGN) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Intel IEEE 802.11 devices").

43.     Intel is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Intel IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.   Intel may be served with process by serving its registered agent, CT Corporation System at 350 N. St. Paul Street, Dallas, Texas 75201.

44.     Upon information and belief, Defendant Atheros is a corporation organized and existing under the laws of Delaware with its principal place of business at 5480 Great America Pkwy., Santa Clara, California 95054.

45.     Atheros designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, Atheros Align® Technology (AR6103, AR9002UB-1NGB, AR9002WB-1NGCD, AR9004WB-1NG, AR9271, AR9485 and AR9285), XSPAN® Technology (including, without limitation AR9280+AR7010, AR9287+AR7010, AR7161, AR9002WB-2NG, AR9280, AR9287, AR9380, AR9382, AR9390, and AR9392), and ROCm® Platform and/or Technology (including, without limitation, AR1511, AR3001, AR3002, AR3011, AR3012, AR6002, AR6003, AR6004, AR6005, and AR6102)) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Atheros IEEE 802.11 devices").

16

46.     Atheros is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Atheros IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Atheros may be served with process by serving its registered agent, LexisNexis Document Solutions Inc. at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

47.     Upon information and belief, Defendant Marvell is a corporation organized and existing under the laws of California with its principal place of business at 5488 Marvell Ln., Santa Clara, California 95054.

48.     Marvell designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits, circuit boards (including, without limitation, 88W8366, 88W8686, 88W8688, 88W8786, 88W8786u, Avastar 88W8797, Avastar 88W8787, Avastar 88W8790, Avastar 88W8764, Avastar 88W8782, and Avastar 88W8782U) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Marvell IEEE 802.11 devices").

49.     Marvell is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Marvell IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Marvell may be served with process by serving its registered agent, CT Corporation System at 350 N. St. Paul Street, Dallas, Texas 75201.

50.     Upon information and belief, Defendant Realtek, is a corporation organized and

existing under the laws of Taiwan with its principal place of business at No. 2 Innovation Road 11, Hsinchu Science Place, Hsinchu 300, Taiwan, R.O.C.

51.     Realtek designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, RTL8180L, RTL8181, RTL8185L, RTL8186/RTL8186P, RTL8187, RTL8187L, RTL8187SE, RTL8187CE, RTL8187CE-VAU, RTL8188CUS, RTL8188RE, RTL8188RU, RTL8188SU, RTL8190-GR, RTL8191RE, RTL8191SE-VA2, RTL8191SU, RTL8192CE-VA4, RTL8192CU, RTL8192E, RTL8192SE, RTL8192SU, RTL8192U, RTL8225, RTL8255, RTL8256, and RTL860/RTL8270) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Realtek IEEE 802.11 devices").

52.     Realtek is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Realtek IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Realtek may be served with process by serving its registered agent, Chunye Kuang, 4790 Irvine Blvd., St. 105-170, Irvine, California 92620.

53.     Upon information and belief, Defendant Ralink, is a corporation organized and existing under the laws of Taiwan with its principal place of business at 5F, No. 5, Tai-Yuen 1st St., Jhubei City, HsinChu Hsien, 30265, Taiwan, R.O.C.

54.     Ralink designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, Wi-Fi Networking products (including, without limitation, RT3883, RT3662, RT3350, RT3052, RT3050, RT2880,

RT3370, RT3572, RT3072, RT3071, RT3070, RT2870, RT2770, RT2571W, RT3562, RT3062, RT2860, RT2661, RT2561S, and RT2561), Wi-Fi for PC products (including, without limitation, RT5390, RT3090BC4, RT3593, RT3390, RT3592, RT3092, RT3090, RT2890, RT2790, RT3370, RT3070, RT2571W, and RT3090BC4), Wi-Fi for Consumer Electronics products (including, without limitation, RT3883, RT3662, RT3052, RT3050, RT2880, RT3572, RT3072, RT3071, RT3070, RT2870, RT3562, and RT3062) and ASDL Wi-Fi Gateway products (including, without limitation, TC3162U, TC30865, and TC2206)) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Ralink IEEE 802.11 devices").

55.     Ralink is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Ralink IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.  Ralink may be served with process by serving its registered agent, Ralink Technology Corporation (USA), 20833 Stevens Creek Blvd., St. 200, Cupertino, California 95014.

56.     Upon information and belief, Defendant CSR plc is a corporation organized and existing under the laws of England with its principal place of business at Churchill House, Cambridge Business Park, Cowley Road, Cambridge, CB4 0WZ, United Kingdom.  Upon information and belief, Defendant CSR also has a main office at 2425 North Central Expressway, Suite 1000, Richardson, Texas 75080.

57.     CSR designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, CSR9000 and UniFi®

19

CSR6026) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "CSR IEEE 802.11 devices").

58.     CSR is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale CSR IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.

## JURISDICTION AND VENUE

59.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285.  Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a).

60.     Venue is proper in the Marshall Division of the Eastern District of Texas under 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

61.     This Court has personal jurisdiction over Dell.  Dell has established minimum contacts with the State of Texas.  Dell, directly and/or through third-party manufactures, manufactures or assembles Dell IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Dell, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Dell, directly and/or through their distribution networks, regularly place Dell IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Dell has purposefully and voluntarily sold one or more of its infringing products with

the expectation that they will be purchased by consumers in the Eastern District of Texas.  Dell IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Dell has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Dell has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Dell would not offend traditional notions of fair play and substantial justice.

62.     This Court has personal jurisdiction over RIM.  RIM has established minimum contacts with the State of Texas.   RIM, directly and/or through third-party manufactures, manufactures or assembles RIM IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.   RIM, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.   Additionally, RIM, directly and/or through their distribution networks, regularly place RIM IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  RIM has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  RIM IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  RIM has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  RIM has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over RIM would not offend traditional notions of fair play and substantial justice.

63.     This Court has personal jurisdiction over Wasp.  Wasp has established minimum

contacts with the State of Texas.  Wasp, directly and/or through third-party manufactures, manufactures or assembles Wasp IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Wasp, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Wasp, directly and/or through their distribution networks, regularly place Wasp IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Wasp has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Wasp IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Wasp has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Wasp has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Wasp would not offend traditional notions of fair play and substantial justice.

64.    This Court has personal jurisdiction over Venture Research.  Venture Research has established minimum contacts with the State of Texas.  Venture Research, directly and/or through third-party manufactures, manufactures or assembles Venture Research IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Venture Research, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Venture Research, directly and/or through their distribution networks,

22

regularly place Venture Research IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Venture Research has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Venture Research IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Venture Research has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Venture Research has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Venture Research would not offend traditional notions of fair play and substantial justice.

65.     This Court has personal jurisdiction over Huawei.  Huawei has established minimum contacts with the State of Texas.  Huawei, directly and/or through third-party manufactures, manufactures or assembles Huawei IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Huawei, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Huawei, directly and/or through their distribution networks, regularly place Huawei IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Huawei has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Huawei IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Huawei has committed acts of patent infringement

within the State of Texas and, more particularly, within the Eastern District of Texas.  Huawei has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Huawei would not offend traditional notions of fair play and substantial justice.

66.     This Court has personal jurisdiction over Murata.   Murata has established minimum contacts with the State of Texas.   Murata, directly and/or through third-party manufactures, manufactures or assembles Murata IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Murata, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.   Additionally, Murata, directly and/or through their distribution networks, regularly place Murata IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Murata has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Murata IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Murata has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Murata has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Murata would not offend traditional notions of fair play and substantial justice.

67.     This Court has personal jurisdiction over Wistron.   Wistron has established minimum contacts with the State of Texas.   Wistron, directly and/or through third-party manufactures, manufactures or assembles Wistron IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Wistron, directly

24

or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Wistron, directly and/or through their distribution networks, regularly place Wistron IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Wistron has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Wistron IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Wistron has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Wistron has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Wistron would not offend traditional notions of fair play and substantial justice.

68.     This Court has personal jurisdiction over ASUS.  ASUS has established minimum contacts with the State of Texas.  ASUS, directly and/or through third-party manufactures, manufactures or assembles ASUS IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  ASUS, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, ASUS, directly and/or through their distribution networks, regularly place ASUS IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  ASUS has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern

25

District of Texas.  ASUS IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  ASUS has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  ASUS has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over ASUS would not offend traditional notions of fair play and substantial justice.

69.     This Court has personal jurisdiction over Lexmark.  Lexmark has established minimum contacts with the State of Texas.  Lexmark, directly and/or through third-party manufactures, manufactures or assembles Lexmark IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Lexmark, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Lexmark, directly and/or through their distribution networks, regularly place Lexmark IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Lexmark has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Lexmark IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Lexmark has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Lexmark has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Lexmark would not offend traditional notions of fair play and substantial justice.

70.     This Court has personal jurisdiction over Canon.  Canon has established minimum

26

contacts with the State of Texas.  Canon, directly and/or through third-party manufactures, manufactures or assembles Canon IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Canon, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Canon, directly and/or through their distribution networks, regularly place Canon IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Canon has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Canon IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Canon has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Canon has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Canon would not offend traditional notions of fair play and substantial justice.

71.     This Court has personal jurisdiction over Digi.  Digi has established minimum contacts with the State of Texas.  Digi, directly and/or through third-party manufactures, manufactures or assembles Digi IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Digi, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Digi, directly and/or through their distribution networks, regularly place Digi IEEE 802.11 devices within the stream of commerce,

with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Digi has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Digi IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Digi has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Digi has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Digi would not offend traditional notions of fair play and substantial justice.

72.     This Court has personal jurisdiction over Intel.  Intel has established minimum contacts with the State of Texas.   Intel, directly and/or through third-party manufactures, manufactures or assembles Intel IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Intel, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.   Additionally, Intel, directly and/or through their distribution networks, regularly place Intel IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Intel has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Intel IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Intel has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Intel has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Intel would not offend

28

traditional notions of fair play and substantial justice.

73.     This Court has personal jurisdiction over Atheros.   Atheros has established minimum contacts with the State of Texas.   Atheros, directly and/or through third-party manufactures, manufactures or assembles Atheros IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Atheros, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.   Additionally, Atheros, directly and/or through their distribution networks, regularly place Atheros IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Atheros has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Atheros IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Atheros has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Atheros has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Atheros would not offend traditional notions of fair play and substantial justice.

74.     This Court has personal jurisdiction over Marvell.   Marvell has established minimum contacts with the State of Texas.   Marvell, directly and/or through third-party manufactures, manufactures or assembles Marvell IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Marvell, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of

MOSAID's patents in the Eastern District of Texas.  Additionally, Marvell, directly and/or through their distribution networks, regularly place Marvell IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Marvell has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Marvell IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Marvell has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Marvell has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Marvell would not offend traditional notions of fair play and substantial justice.

75.     This Court has personal jurisdiction over Realtek.  Realtek has established minimum contacts with the State of Texas.  Realtek, directly and/or through third-party manufactures, manufactures or assembles Realtek IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Realtek, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  Additionally, Realtek, directly and/or through their distribution networks, regularly place Realtek IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Realtek has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Realtek IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Realtek has committed acts of patent infringement

within the State of Texas and, more particularly, within the Eastern District of Texas.  Realtek has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Realtek would not offend traditional notions of fair play and substantial justice.

76.   This Court has personal jurisdiction over Ralink.   Ralink has established minimum contacts with the State of Texas.   Ralink, directly and/or through third-party manufactures, manufactures or assembles Ralink IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  Ralink, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.   Additionally, Ralink, directly and/or through their distribution networks, regularly place Ralink IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  Ralink has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  Ralink IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  Ralink has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  Ralink has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Ralink would not offend traditional notions of fair play and substantial justice.

77.   This Court has personal jurisdiction over CSR.  CSR has established minimum contacts with the State of Texas.   CSR, directly and/or through third-party manufactures, manufactures or assembles CSR IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.  CSR, directly or through

intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.   Additionally, CSR, directly and/or through their distribution networks, regularly place CSR IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas.  CSR has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas.  CSR IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas.  CSR has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.  CSR has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over CSR would not offend traditional notions of fair play and substantial justice.

## PATENT INFRINGEMENT

78.     MOSAID incorporates by reference paragraphs 1–77 as if fully set forth herein.

79.     On July 14, 1992, the United States Patent and Trademark Office ("USPTO") duly an legally issued the '006 Patent entitled "Carrier Detection For A Wireless Local Area Network" with Adriaan Kamerman and Hans van Driest, as the named inventors after full and fair examination.  MOSAID is the assignee of all rights, title, and interest in the '006 Patent and possesses all rights of recovery under the '006 Patent, including the right to recover damages for past infringement.

80.     On September 29, 1992, the USPTO duly and legally issued the '920 Patent entitled "Radio LAN Station With Improved Frame Delimiter Detection In A Spread Spectrum Environment" with Johannes P. N. Haagh, Hans van Driest, and Gerrit Smit, as the named

inventors after full and fair examination. MOSAID is the assignee of all rights, title, and interest in the '920 Patent and possesses all rights of recovery under the '920 Patent, including the right to recover damages for past infringement.

81.     On June 6, 1995, the USPTO duly and legally issued the '887 Patent entitled "Medium Access Protocol For Wireless Local Area Network" with Wilhelmus J. M. Diepstraten and Hendrik van Bokhorst, as the named inventors after full and fair examination. MOSAID is the assignee of all rights, title, and interest in the '887 Patent and possesses all rights of recovery under the '887 Patent, including the right to recover damages for past infringement.

82.     On January 6, 1998, the USPTO duly and legally issued the '428 Patent entitled "Multirate Wireless Data Communication System" with Jan Boer, Wilhelmus Josephus Diepstraten, Adriaan Kamerman, Hendrik van Bokhorst, and Hans van Driest, as the named inventors after full and fair examination. MOSAID is the assignee of all rights and interest in the '428 Patent and possesses all rights of recovery under the '428 Patent, including the right to recover damages for past infringement.

83.     On May 13, 2003, the USPTO duly and legally issued the '786 Patent entitled "Orthogonal Frequency Division Multiplexing System With Selectable Rate" with Richard Van Nee as the named inventor after full and fair examination. MOSAID is the assignee of all rights and interest in the '786 Patent and possesses all rights of recovery under the '786 Patent, including the right to recover damages for past infringement.

84.     On January 31, 2006, the USPTO duly and legally issued the '972 Patent entitled "Frequency Division Multiplexing System With Selectable Rate" with Richard Van Nee as the named inventor after full and fair examination. MOSAID is the assignee of all rights and interest in the '972 Patent and possesses all rights of recovery under the '972 Patent, including the right

33

to recover damages for past infringement.

85.     The '006, '920,'887, '428, '786, and '972 Patents are collectively referred to herein as the "Patents-in-Suit."

86.     Each of the Patents-in-Suit is valid and enforceable.

87.     Dell has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Dell IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Dell's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Dell's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

88.     Dell indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Dell provides Dell's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Dell's IEEE 802.11 devices.  Accordingly, Dell indirectly infringes because Dell has been and is now actively inducing others, such as end users of Dell's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

89.     Dell also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Dell's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Dell offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for

use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

90.     RIM has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its RIM IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. RIM's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. RIM's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

91.     RIM indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). RIM provides RIM's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use RIM's IEEE 802.11 devices. Accordingly, RIM indirectly infringes because RIM has been and is now actively inducing others, such as end users of RIM's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

92.     RIM also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of RIM's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because RIM offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

35

93.    Wasp has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Wasp IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Wasp's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Wasp's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

94.    Wasp indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Wasp provides Wasp's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Wasp's IEEE 802.11 devices.  Accordingly, Wasp indirectly infringes because Wasp has been and is now actively inducing others, such as end users of Wasp's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

95.    Wasp also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Wasp's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Wasp offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

96.    Venture Research has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its

Venture Research IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Venture Research's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Venture Research's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

97.     Venture Research indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Venture Research provides Venture Research's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Venture Research's IEEE 802.11 devices. Accordingly, Venture Research indirectly infringes because Venture Research has been and is now actively inducing others, such as end users of Venture Research's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

98.     Venture Research also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Venture Research's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Venture Research offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

99.     Huawei has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Huawei IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.

Huawei's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Huawei's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

100.    Huawei indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Huawei provides Huawei's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Huawei's IEEE 802.11 devices.  Accordingly, Huawei indirectly infringes because Huawei has been and is now actively inducing others, such as end users of Huawei's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

101.    Huawei also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Huawei's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Huawei offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

102.    Murata has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Murata IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Murata's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Murata's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or

when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

103.    Murata indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).   Murata provides Murata's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Murata's IEEE 802.11 devices.  Accordingly, Murata indirectly infringes because Murata has been and is now actively inducing others, such as end users of Murata's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

104.    Murata also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Murata's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Murata offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

105.    Wistron has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Wistron IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Wistron's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Wistron's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

106. Wistron indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Wistron provides Wistron's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Wistron's IEEE 802.11 devices. Accordingly, Wistron indirectly infringes because Wistron has been and is now actively inducing others, such as end users of Wistron's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

107. Wistron also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Wistron's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Wistron offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

108. ASUS has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its ASUS IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. ASUS's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. ASUS's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

109. ASUS indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). ASUS provides ASUS's IEEE 802.11 devices to

consultants, companies, and/or end-user customers in the United States who, in turn, install and use ASUS's IEEE 802.11 devices.  Accordingly, ASUS indirectly infringes because ASUS has been and is now actively inducing others, such as end users of ASUS's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

110.    ASUS also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of ASUS's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because ASUS offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

111.    Lexmark has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Lexmark IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Lexmark's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Lexmark's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

112.    Lexmark indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Lexmark provides Lexmark's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Lexmark's IEEE 802.11 devices.   Accordingly, Lexmark indirectly infringes because

41

Lexmark has been and is now actively inducing others, such as end users of Lexmark's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

113.   Lexmark also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Lexmark's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Lexmark offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

114.   Canon has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Canon IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Canon's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Canon's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

115.   Canon indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).   Canon provides Canon's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Canon's IEEE 802.11 devices.  Accordingly, Canon indirectly infringes because Canon has been and is now actively inducing others, such as end users of Canon's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

116.    Canon also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Canon's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Canon offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

117.    Digi has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Digi IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Digi's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Digi's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

118.    Digi indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Digi provides Digi's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Digi's IEEE 802.11 devices.  Accordingly, Digi indirectly infringes because Digi has been and is now actively inducing others, such as end users of Digi's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

119.    Digi also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Digi's IEEE 802.11 devices, in

accordance with 35 U.S.C. § 271(c), because Digi offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

120.    Intel has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Intel IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Intel's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Intel's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

121.    Intel indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Intel provides Intel's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Intel's IEEE 802.11 devices.  Accordingly, Intel indirectly infringes because Intel has been and is now actively inducing others, such as end users of Intel's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

122.    Intel also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Intel's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Intel offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination,

44

or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

123.     Atheros has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Atheros IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Atheros's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Atheros's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

124.     Atheros indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).   Atheros provides Atheros's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Atheros's IEEE 802.11 devices.   Accordingly, Atheros indirectly infringes because Atheros has been and is now actively inducing others, such as end users of Atheros's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

125.     Atheros also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Atheros's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Atheros offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or

45

especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

126.    Marvell has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Marvell IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Marvell's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Marvell's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

127.    Marvell indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Marvell provides Marvell's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Marvell's IEEE 802.11 devices.  Accordingly, Marvell indirectly infringes because Marvell has been and is now actively inducing others, such as end users of Marvell's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

128.    Marvell also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Marvell's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Marvell offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

129.    Realtek has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Realtek IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Realtek's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Realtek's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

130.    Realtek indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).   Realtek provides Realtek's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Realtek's IEEE 802.11 devices.   Accordingly, Realtek indirectly infringes because Realtek has been and is now actively inducing others, such as end users of Realtek's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

131.    Realtek also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Realtek's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Realtek offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

132.    Ralink has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Ralink

IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  Ralink's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  Ralink's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

133.    Ralink indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Ralink provides Ralink's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Ralink's IEEE 802.11 devices.  Accordingly, Ralink indirectly infringes because Ralink has been and is now actively inducing others, such as end users of Ralink's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

134.    Ralink also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Ralink's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Ralink offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

135.    CSR has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its CSR IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit.  CSR's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit.  CSR's IEEE 802.11 devices

48

infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

136.   CSR indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b).  CSR provides CSR's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use CSR's IEEE 802.11 devices.  Accordingly, CSR indirectly infringes because CSR has been and is now actively inducing others, such as end users of CSR's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

137.   CSR also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of CSR's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because CSR offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

138.   Defendants have infringed and/or continue to infringe one or more claims of the Patents-in-Suit as set forth above.  Defendants are liable for direct infringement, as well as indirect infringement by way of inducement and/or contributory infringement, for each of the Patents-in-Suit pursuant to 35 U.S.C. § 271 (a), (b), (c), and/or (f) as set forth above. For MOSAID's claims of indirect infringement, Defendants' consultants, companies, and/or end-user customers are direct infringers of the Patents-in-Suit.

139.    Defendants' acts of infringement have caused damage to MOSAID.  MOSAID is entitled to recover from Defendants the damages sustained by MOSAID as a result of Defendants' wrongful acts in an amount subject to proof at trial.  In addition, MOSAID has been irreparably harmed by the Defendants' acts of infringement of the Patents-in-Suit, and will continue to be harmed unless and until Defendants' acts of infringement are enjoined by this Court.  Defendants' infringement of MOSAID's rights under the Patents-in-Suit will continue to damage MOSAID's business, causing irreparable injury and damage, for which there is no adequate remedy of law, unless restrained and enjoined by this Court.   The hardships that would be imposed upon Defendants by an injunction are less than those faced by MOSAID should an injunction not issue.   Furthermore, the public interest would be served by issuance of an injunction.

140.    Defendants have received actual notice of infringement.

141.    Defendants' infringement of the Patents-in-Suit is willful and deliberate entitling MOSAID to enhanced damages and to attorneys' fees incurred in prosecuting this action.

## DEMAND FOR A JURY TRIAL

142.    MOSAID hereby demands a trial by jury for all issues triable of right by a jury.

## PRAYER

WHEREFORE, MOSAID prays for relief:

A.    A judgment that Defendants have directly infringed, and/or indirectly infringed by way of inducement and/or contributory infringement, the Patents-in-Suit;

B.    A judgment and order that Defendants, and any of its parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors and assigns, and those persons acting in concert, participation, privity, on behalf of, in joint venture, or in partnership

50

with Defendants, be enjoined from making, importing, using, offering for sale, selling, or causing to be sold any product or service falling within the scope of any claim of the Patent-in-Suit, or otherwise infringing, inducing to infringe, or contributing to the infringement of any of the Patents-in-Suit;

C.      The Court order an accounting for damages through verdict and thereafter until Defendants are enjoined from further infringing activities;

D.      A judgment and order that MOSAID be awarded its actual damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement until Defendants are enjoined from further infringing activities;

E.      A judgment and order requiring Defendants to pay MOSAID pre-judgment and post-judgment interest on the damages awarded, including an award of prejudgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the Patents-in-Suit by Defendants to the day a damages judgment is entered, and further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

F.      A judgment and order finding that Defendants' infringement is willful and deliberate, entitling MOSAID to enhanced damages pursuant to 35 U.S.C. § 284;

G.      A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements), attorneys' fees as provided by 35 U.S.C. § 285;

H.      In the event an injunction is not awarded, a compulsory ongoing royalty; and

I.      MOSAID be awarded such other and further relief as the Court deems just and equitable.

DATED:  March 16, 2011

Respectfully submitted,

**McKOOL SMITH, P.C.**


/s/ Theodore Stevenson, III
Theodore Stevenson, III
Lead Attorney
Texas State Bar No. 19196650
**McKOOL SMITH, P.C.**
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044


John M. Shumaker
Texas State Bar No 24033069
jshumaker@mckoolsmith.com
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744


Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
**McKOOL SMITH, P.C.**
104 E. Houston, Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099


**ATTORNEYS FOR PLAINTIFF
MOSAID TECHNOLOGIES
INCORPORATED**