# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

MOSAID TECHNOLOGIES INCORPORATED,

              Plaintiff.

*v.*

DELL, INC., *et al.*

              Defendants.

**No. 2:11-CV-179**

JURY

Hon. T. John Ward

---

MURATA MANUFACTURING CO., LTD.,
MURATA ELECTRONICS NORTH AMERICA, INC.,
and SYCHIP, L.L.C.,

              Counterclaim Plaintiffs,

*v.*

MOSAID TECHNOLOGIES INCORPORATED,

              Counterclaim Defendant.

---

## MURATA PARTIES' ANSWER, DEFENSES, AND COUNTERCLAIMS

13 June 2011

Defendants Murata Manufacturing Co., Ltd., Murata Electronics North America, Inc., and SyChip, L.L.C., the successor-in-interest to named defendant SyChip, Inc., which no longer exists (collectively "the Murata Parties"), by counsel, hereby answer the allegations in the numbered paragraphs of the Original Complaint for Patent Infringement ("Complaint") as follows and plead and give notice of their defenses.  To the extent an answer is required from Murata Wireless Solutions, which is not a separate legal entity, or SyChip, Inc., this shall also serve as the answer of Murata Wireless Solutions and SyChip, Inc.:

## ANSWER TO THE ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

The Murata Parties, by counsel, hereby answer the allegations of the Original Complaint for Patent Infringement as follows:

## NATURE OF THE ACTION

**1.**    This is an action brought by MOSAID against Defendants' for Defendants' infringement of the Patents-in-Suit.

**Answer:**    The Murata Parties admit that the Complaint purports to assert claims for patent infringement against the Murata Parties and other defendants based on U.S. Patent Nos. 5,131,006 ("'006 patent"); 5,151,920 ("'920 patent"); 5,422,887 ("'887 patent"); 5,706,428 ("'428 patent"); 6,563,786 ("'786 patent"); and 6,992,972 ("'972 patent") (collectively, "Patents-in-Suit"). The Murata Parties deny the allegations that they have infringed the Patents-in-Suit.  Except as expressly admitted, the Murata Parties deny the remaining allegations set forth in this paragraph.

**2.**     The Institute of Electrical and Electronics Engineers ("IEEE") has developed standards for implementing wireless local area network ("WLAN" or "WiFi") computer communications in certain frequency bands.

> **Answer:**   Admitted.

**3.**     Communications within said frequency bands has expanded over time and includes, without limitation, communications compliant with the 802.11a, 802.11b, 802.11g, and 802.11n standards (collectively, "802.11 standards").

> **Answer:**   Admitted.

**4.**     MOSAID is the assignee of all rights and interest in the Patents-in-Suit, which cover products that operate in compliance with IEEE 802.11 standards.

> **Answer:**   Denied.

**5.**     Defendants make, use, sell, offer for sale, import into the United States, and/or export at least one product that complies with or implements the IEEE 802.11 standards.

> **Answer:**   The Murata Parties deny that Murata Electronics North America, Inc. makes any products. The Murata Parties admit that one or more of the Murata Parties makes, uses, sells, offers for sale, imports into the United States and/or exports certain products. To the extent that this paragraph alleges any such product "complies with or implements the IEEE 802.11 standards," because Plaintiff fails to specify which product(s) are alleged to comply with what standard(s) and what mandatory or permissive aspect(s) of said standard(s), the Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations set forth in this paragraph and therefore deny them. The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph as they pertain to any other Defendant and therefore deny them. Except as expressly admitted, the Murata Parties deny any remaining allegations set forth in this paragraph of the Complaint.

**6.**    Accordingly, MOSAID seeks remedies for Defendants' infringement of at least one claim from each of the Patents-in-Suit.

**Answer:**    The Murata Parties admit that the Complaint purports to be an action for patent infringement but deny that the Murata Parties have infringed any claim of the Patents-in-Suit and deny that Plaintiff is entitled to any relief from the Murata Parties. Except as expressly admitted, the Murata Parties deny any remaining allegations set forth in this paragraph of the Complaint.

## **THE PARTIES**

**7.**    Plaintiff MOSAID Technologies Incorporated is a corporation subject to the laws of Canada with its principal place of business at 11 Hines Road, Suite 203, Ottawa, Ontario Canada K2K 2X1. Plaintiff MOSAID's United States principal place of business is located at 101 E. Park Blvd., Suite 600, Plano, Texas 75074.

**Answer:**    The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

- 3 -

**8.**     Upon information and belief, Defendant Dell is a corporation organized and existing under the laws of Delaware with its principal place of business at 1 Dell Way, Round Rock, Texas 78682-2222.

**Answer:**     The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**9.**     Dell designs, markets, uses, manufactures, imports, sells, and/or offers for sale computers (including without limitation laptop computers and notebook computers, and tablet computers), as well as routers (including, without limitation, Dell TrueMobile 2300 Wireless Broadband Router, Model WX-5565D), printers (including, without limitation, V715W Printer, 5330dn Monochrome Laser Printer, Dell P713W All In One Photo Printer- WiFi, Print, Copy, Scan, Dell V515W All In One (Product) Red Printer- Wifi, Print, Copy, Scan, Fax, Dell 1355cnw Color LED Multi-function Laser-Class Printer, Dell V313W All In One Printer- WiFi, Print, Copy, Scan, Dell P513W All In One Printer- WiFi, Print, Copy, Scan, ), projectors (including, without limitation, Dell S300wi Short Throw Wireless Interactive Projector, Dell S300w Short Throw Wireless Projector, Dell 4610X Wireless Plus Mainstream Projector), Dell Streak 5, Dell Streak 7 Tablet, Dell Venue Smartphone, Dell Venue Pro Windows Phone 7 Smartphone, and adapters (including, without limitation, Wireless 1490 802.11a/g Mini PCI Card, 1501 802.11n wireless card, Wireless 1505 PCI Express WLAN Mini-Card, 2.4/5 GHz Wireless 1505 PCI Express Internal WLAN Half-Height Mini-Card, Wireless 1510 PCI Express Internal WLAN Half-Height Mini-Card, Wireless 1520 802.11n Half Mini-Card, Wireless 5300 PCI Express Internal Half-Height Mini-Card, 4965AGN Wireless-N PCI Express Mini-Card, 4965AGN PCI Express WLAN Mini-Card, Wireless 4965 PCI Express WLAN Mini-Card, Wireless 3945 802.11a/g Mini PCI Express Card, Pro/Wireless 3945 802.11a/g PCIe Mini-Card, Wireless 1395 802.1 1b/g PCI Express Mini Card, Wireless 1395 802.11g PCI Express Mini Card, Wireless 1395 Internal PCI-Express Mini-Card, Wireless 1397 802.11b/g PCI Express Half-Height Mini Card, WiFi Link 5300 Wireless-Network Mini-Card, WiFi Link 5100 Wireless-N Half-Height Mini-Card, Multi-Protocol Card with Wireless Printer Adapter 3310 USB) used and/or designed for use in computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Dell IEEE 802.11 devices").

**Answer:**     The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**10.**   Dell is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Dell IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Dell may be served with process by serving its registered agent, Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

**Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**11.**   Upon information and belief, Defendant Research in Motion Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 122 W. John Carpenter Parkway, Suite 430, Irving, Texas 75039. Upon information and belief, Defendant Research In Motion, Ltd. is a corporation organized and existing under the laws of Ontario, Canada with a principal place of business at 295 Phillip Street, Waterloo, Ontario, Canada. Upon information and belief, Research in Motion Corporation is a wholly owned subsidiary of Research In Motion, Ltd.

**Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**12.**   RIM designs, markets, uses, manufactures, imports, sells, and/or offers for sale smart phones (including, without limitation, Torch, Style, Curve, Pearl, Bold, Storm) and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "RIM IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**13.**   RIM is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale RIM IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. RIM may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

**Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**14.**   Upon information and belief, Defendant Datalogic S.p.A., is a corporation organized and existing under the laws of Italy with its principal place of business at Via Candini, 2, 40012 Lippo di Calderara di Reno, Bologna, Italy. Upon information and belief, Defendant Informatics Holdings, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 1400 10th Street, Plano, Texas 75074. Upon information and belief, Defendant Wasp Barcode Technologies, Ltd. is a corporation organized and existing under the laws of the United Kingdom with its principal place of business at 1400 10th Street, Plano, Texas 75074. Upon information and belief, Wasp Barcode Technologies, Ltd. is a wholly owned subsidiary of Informatics Holdings, Inc., and Informatics Holdings, Inc. is wholly owned by Datalogic S.p.A.

**Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**15.**   Wasp designs, markets, uses, manufactures, imports, sells, and/or offers for sale mobile computers (including, without limitation, Wasp WPA 1000 Mobile Computer, WPA1200wm Mobile Computer, WDT3200 Mobile Computer, Wasp WDT3250 Mobile Computer), and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Wasp IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**16.**   Wasp is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Wasp IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Upon information and belief, Defendant Wasp Barcode Technologies, Ltd. is a wholly owned subsidiary of Informatics Holdings, Inc. Upon information and belief, Datalogic S.p.A. is the parent of Informatics Holdings, Inc. Wasp may be served with process by serving its registered agent, Capitol Corporate Services, Inc., at 800 Brazos, Suite 400, Austin, Texas 78701.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**17.**   Upon information and belief, Defendant Venture Research, Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 3001 Summit Ave., Suite 100, Plano, Texas 75074.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**18.**   Venture Research designs, markets, uses, manufactures, imports, sells, and/or offers for sale RFID (Radio Frequency Identification) products (including, without limitation, SlimTrak™ Intelligent UHF RFID Reader with Integrated Computer, SlimTrak™ UHF RFID Reader with Integrated Antennas, Document and Folder Desktop RFID Reader with a WiFi component and Ruggedized Forklift Readers), and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Venture Research IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

19.   Venture Research is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Venture Research IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Venture Research may be served with process by serving its registered agent, John Baker, 7141 Oakbrook Dr., Plano, Texas 75025.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

20.   Upon information and belief, Defendant Huawei Technologies Co., Ltd. ("Huawei China") is a corporation organized and existing under the laws of China with its principal place of business at Bantian, Longgang District, Shenzhen 518129, P.R. China. Upon information and belief, Defendant Huawei Technologies USA Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024. Upon information and belief, Defendant Huawei Device USA Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024. Upon information and belief, Defendant Futurewei Technologies, Inc. is a corporation organized and existing under the laws of Texas with its principal place of business at 5700 Tennyson Parkway, Suite #500 Plano, Texas 75024. Upon information and belief, Defendants Huawei Technologies USA Inc., Huawei Device USA Inc., and Futurewei Technologies, Inc. are subsidiaries of Huawei China.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**21.**   Huawei designs, markets, uses, manufactures, imports, sells, and/or offers for sale gateways (including, without limitation, Eudemon200E and HG523), network devices (including, without limitation, Smart AX mt841), routers (including, without limitation, E5830 router, E5S, E5832, E585, E960, USG2110, USG2110AGWW, USG2110AW and USG2110FW), access points (including, without limitation, 3G9WB), phones (including, without limitation, Ascend), Ideos S7, X5 and X3 tablets, UM840, E585, U8500, and/or other products used and/or designed for use in routers, personal computers, smart phones, game consoles with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Huawei IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**22.**   Huawei is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Huawei IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Huawei Technologies USA Inc. and Huawei Device USA Inc. may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul St. Ste. 2900, Dallas, Texas 75201. Futurewei Technologies, Inc. may be served with process by serving its registered agent, Haibo Lin, at 1700 Alma Drive, Suite 100, Plano, Texas 75075.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**23.**   Upon information and belief, Defendant Murata Electronics North America, Inc., is a corporation organized and existing under the laws of Georgia with its principal place of business at 2200 Lake Park Drive, Smyrna, Georgia, 30080. Upon information and belief, Defendant Murata Manufacturing Co., Ltd., is a corporation organized and existing under the laws of Japan with its principal place of business at 10-1, Higashikotari 1-chrome, Nagaokakyoshi, Kyoto 617-8555, Japan. Upon information and belief, Defendant Sychip, Inc.

d/b/a Murata Wireless Solutions is a division of Murata Electronics North America, Inc. and is a corporation organized and existing under the laws of Delaware with its principal place of business at 2805 North Dallas Parkway, Suite 400, Plano, TX 75093. Upon information and belief, Murata Electronics North America, Inc. is a wholly owned subsidiary of Murata Manufacturing Co., Ltd.

**Answer:**   The Murata Parties admit that Murata Manufacturing Co., Ltd. is a corporation organized and existing under the laws of Japan with its principal place of business at 10-1, Higashikotari 1-chome, Nagaokakyoshi, Kyoto 617-8555, Japan.

The Murata Parties deny that Murata Electronics North America, Inc. is a corporation organized and existing under the laws of Georgia.  The Murata Parties admit that Murata Electronics North America, Inc.'s principal place of business is located at 2200 Lake Park Drive, Smyrna, Georgia, 30080. The Murata Parties admit that Murata Electronics North America, Inc. is a wholly owned subsidiary of Murata Manufacturing Co., Ltd.

The Murata Parties state that SyChip, Inc. no longer exists.  The Murata Parties admit that SyChip, L.L.C. is a wholly-owned subsidiary of Murata Electronics North America, Inc. The Murata Parties admit that SyChip, L.L.C. is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 2805 North Dallas Parkway, Suite 400, Plano, TX 75093.  The Murata Parties further answer that "Murata Wireless Solutions" is a division of Murata Electronics North America and is not a separate legal entity.  Therefore, "Murata Wireless Solutions" cannot be, and is not, a party to this action.

Except as expressly admitted, the Murata Parties deny any remaining

allegations set forth in this paragraph of the Complaint.

**24.**   Murata designs, markets, uses, manufactures, imports, sells, and/or offers for sale semiconductors, and chip scale modules (including, without limitation, Wi-Fi™ 802.11 b/g/n, 802.11 b/g/n Bluetooth® v2.1 + EDR, and W-Fi 802.11 a/b/g/n Bluetooth® v2.1 + EDR) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Murata IEEE 802.11 devices").

**Answer:**   The Murata Parties admit that one or more of the Murata Parties designs, markets, uses, manufactures, imports, sells, and/or offers for sale products bearing the names Wi-Fi™ 802.11 b/g/n, 802.11 b/g/n Bluetooth® v2.1 + EDR, and Wi-Fi 802.11 a/b/g/n Bluetooth® v2.1 + EDR.

The Murata Parties admit that Murata Manufacturing Co., Ltd. designs products outside of the United States and/or sells products.

The Murata Parties admit that Murata Electronics North America, Inc. markets, sells, offers for sale and/or imports products.

The Murata Parties admit that SyChip, Inc. in the past designed, marketed, sold, and/or offered products for sale and manufactured a limited number of products for internal analysis and promotion.  The Murata Parties deny that SyChip, L.L.C. designs, markets, uses, manufactures, imports, sells, and/or offers for sale any Wi-Fi products.

To the extent that this paragraph alleges that any products are "compliant with the IEEE 802.11 standards," because Plaintiff fails to specify which product(s) are alleged to comply with what standard(s) and what mandatory or permissive aspect(s) of said standard(s), the Murata Parties are

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them. Except as expressly admitted, the Murata Parties deny any remaining allegations set forth in this paragraph of the Complaint.

**25.**   Murata is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Murata IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Sychip and Murata Wireless Solutions may be served with process by serving its' registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701. Murata Electronics North America, Inc. may be served with process by serving its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Georgia 30092.

**Answer:**   The Murata Parties admit that one or more of the Murata Parties has conducted some transactions within this District.  The Murata Parties deny that SyChip, Inc. is doing business in the United States.  The Murata Parties admit that Murata Electronics North America, Inc. can be served with process through its registered agent in Norcross, Georgia.  The Murata Parties admit that SyChip, Inc. can be served with process through its registered agent in Austin, Texas. The Murata Parties deny that any Murata Party product infringes any claim of the Patents-in-Suit.  Except as expressly admitted, the Murata Parties deny any remaining allegations set forth in this paragraph.

**26.**   Upon information and belief, Defendant Wistron Corporation is a corporation organized and existing under the laws of Taiwan with its principal place of business at 21F, 88, Sec.1, Hsin Tai Wu Rd., Hsichih, Taipei Hsien

221, Taiwan, R.O.C. Upon information and belief, Defendant Wistron LLC, is a corporation organized under the laws of Wyoming with its principal place of business at 1790 N. Lee Trevino Dr., Suite 506, El Paso, Texas 79936. Upon information and belief, Defendant SMS Infocomm Corporation (formerly named Wistron Infocomm (Texas) Corporation), is a corporation organized and existing under the laws of Texas with its principal place of business at 4051 Freeport Parkway, Suite 200, Grapevine, Texas 76051. Upon information and belief, Defendant Wistron Infocomm (Texas) Corporation, is a corporation organized and existing under the laws of Texas with its principal place of business at 4051 Freeport Parkway, Suite 200, Grapevine, Texas 76051. Upon information and belief, Defendant Wistron Infocomm Technology (America) Corporation is a corporation organized and existing under the laws of Texas with its principal place of business at 800 Parker Square, Suite 285A, Flower Mound, Texas 75028. Upon information and belief, Wistron also has an office at 1104 S. Mays St., Round Rock, Texas 78664. Upon information and belief, Defendant Wistron NeWeb Corporation is a corporation organized and existing under the laws of Taiwan with its principal place of business at 20 Park Avenue II (or Yuanchiu 2nd Rd), Hsinchu Science Park, Hsinchu 308, Taiwan, R.O.C. Upon information and belief, SMS Infocomm Corporation and Wistron Infocomm (Texas) Corporation are wholly owned subsidiaries of Wistron Corporation, and Wistron NeWeb Corporation is also a subsidiary of Wistron Corporation. Upon information and belief, Wistron Infocomm Technology (America) Corporation is a wholly owned subsidiary of Wistron LLC, and Wistron Corporation is the parent of Wistron LLC.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**27.**   Wistron designs, markets, uses, manufactures, imports, sells, and/or offers for sale adapters (including, without limitation, NeWeb 802.11b Wireless LAN PCI Card, CM9 802.11a 802.11b 802.11g Mini-PCI Wistron NeWeb mini-PCI, DRUC-U2 802.11g usb2 adapter, DCMA-81, DCMA-82, DRMR-82, DNMA-92, DNMA-83, DNUA-81, SWA, DNXA-95, DNXA-93) and/or other products with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Wistron IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**28.**   Wistron is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Wistron IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. SMS Infocomm Corporation and Wistron Infocomm (Texas) Corporation may be served with process by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201. Wistron Infocomm Technology (America) Corporation may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**29.**   Upon information and belief, Defendant ASUSTeK Computer, Inc. is a corporation organized and existing under the laws of Taiwan with its principal place of business at 150 Li-Te Rd., Peitou, Taipei, 112, Taiwan, R.O.C. Upon information and belief, Defendant ASUS Computer International, Inc. is a corporation organized and existing under the laws of California with its principal place of business at 44370 Nobel Drive, Fremont, California 94538. Upon information and belief, Defendant ASUS Computer International, Inc. is a subsidiary of ASUSTeK Computer, Inc.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**30.**   ASUS designs, markets, uses, manufactures, imports, sells, and/or offers for sale laptops, integrated circuits and/or circuit boards (including, without limitation, Motherboards (P5B Deluxe/WiFi-AP, P5N32-SLI Premium/WiFiAP, P5N64 WS Professional, P5K3 Deluxe/WiFi-AP, P5K Deluxe/WiFi-AP, P5K-E/WiFi-AP, P5K Premium/WiFi-AP, P5E3 Deluxe/WiFi @n, M3A32-MVP Deluxe/WiFi-AP, P5Q3 Deluxe/WiFi-AP @n)), wireless routers (including, without limitation, WL-520GU Broad Range EZ Wireless Router,

WL-500gP V2 Wireless Router, RT-N16 Wireless N Router, RT-N12 SuperSpeedN Wireless Router and RT-N13U Wireless N Router), Wireless PCI Adapter (including, without limitation, PCI-G31), ADSL Wireless Router (including, without limitation, WL-AM604g), notebooks (including, without limitation, B50A, B80A, F80Q, G51Vx, G71Gx, F50Sv, M60Vp, N70Sv, N90Sv, U6V, LAMBORGHINI VX5, S6F, F6Ve, U20A, K701O, K401N, K501J, N81Vp, G72 Series, and G73 Series), Eee PC Series (including, without limitation, 1215N, 1015PEM, 1001PX, EeeBox PC EB 1501P, EeeBox PC B201, and Eee Slate EP121), cellular phone (including, without limitation, GARMINfone), Internet Radio AIR, Skype Phone (including, without limitation, AiGuru S2, Eee Videophone AiGuru SV 1 and Videophone Touch AiGuru SV 1 T), and/or other products used and/or designed for use in routers, personal computers, smart phones, game consoles with wireless capability compliant with the IEEE 802.11 standards (hereinafter "ASUS IEEE 802.11 devices").

    **Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**31.**   ASUS is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale ASUS IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. ASUS may be served with process by serving its registered agent, Godwin Yan, at 800 Corporate Way, Fremont, California 94539.

    **Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**32.**   Upon information and belief, Defendant Lexmark International, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 740 New Circle Road, Lexington, Kentucky 40550.

    **Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

33.    Lexmark designs, markets, uses, manufactures, imports, sells, and/or offers for sale printers (including, without limitation, Prevail Pro705, Interact S605, S816 Genesis, C544DW, C734DW, E460DW, Z2420, S305, S605, S405, S505, PRO901, PRO905, PRO705, PRO205, S815, X364DW, X466DWE, X544DW), adapters (including, without limitation, Lexmark 802.11b Wireless Print Adapter, N2050 802.11b/g Wireless Network Card), print servers (including, without limitation, N4050e 802.11g Wireless Print Server, C925 MarkNet N8250 802.11 b/g/n Wireless Print Server, Marknet N8150 802.11 b/g/n Wireless Print Server) used and/or designed for use in printers (including, without limitation, X646dte, X5075 Professional, X646e), and/or other products (including, without limitation, Internal MarkNet™ N8050 802.11g Wireless), and/or other products, with wireless capability compliant with the IEEE 802.11 standards ("Lexmark IEEE 802.11 devices").

   **Answer:**    The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

34.    Lexmark is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Lexmark IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Lexmark may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

   **Answer:**    The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

35.    Upon information and belief, Defendant Canon Inc. is a corporation organized and existing under the laws of Japan with its principal place of business at 30-2, Shimomaruko 3- chome, Ohta-ku, Tokyo 146-8501, Japan. Upon information and belief, Defendant Canon U.S.A., Inc. is a wholly owned

subsidiary of Canon Inc., and is a corporation organized and existing under the laws of New York with its principal place of business at One Canon Plaza, Lake Success, New York 11042.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

36.   Canon designs, markets, uses, manufactures, imports, sells, and/or offers for sale printers (including, without limitation, PIXMA MX870 Wireless All-In-One Printer, PIXMA MP495 Wireless, PIXMA MG5220 Wireless, PIXMA MG6120 Wireless, PIXMA MP990 Wireless, PIXMA MG8120 Wireless, PIXMA MX410 with PP-201, PIXMA MP800R, PIXMA iP5200R, PIXMA iP4000R, PIXMA MP980, PIXMA MP620, PIXMA MX860, PIXMA MP640, PIXMA MPR640R, PIXMA MP620B, PIXMA MX340, PIXMA MX350, Powershot SD430), transmitters (including, without limitation, WFT-E1, WFT-E2 IIA, WFT-E4 IIA, WFTE5A), and/or other products (including, without limitation, FS-CV 802.11G Dongle), and/or other products, with wireless capability compliant with the IEEE 802.11 standards ("Canon IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

37.   Canon is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Canon IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Canon may be served with process by serving its registered agent, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**38.**   Upon information and belief, Defendant Digi International Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 11001 Bren Road East, Minnetonka, MN 55343.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**39.**   Digi designs, markets, uses, manufactures, imports, sells, and/or offers for sale modules (including, without limitation, Digi Connect ME®, ConnectCore i.MX51/ Wi-i.MX51, ConnectCore i.MX53/ Wi-i.MX53, ConnectCore Wi-9C, ConnectCore Wi-9M 2443, ConnectCore Wi-9P 9215, Connect Wi-Wave, Connect Wi-EM, Digi Connect® Wi-ME, RabbitCore® RCM5400W Series, MiniCore® RCM6700 Series, MiniCore® RCM5600W Series), routers and/or gateways (including, without limitation, Digi TransPort® DR with a WiFi option, Digi TransPort® WR Family, ConnectPort® WAN Family, ConnectPort® X5, ConnectPort X2, X4, X8), and/or other products (including, without limitation, ConnectPort® TS W, PortServer TS W MEI, Digi Connect® Wi-SP, SBC BL4S200 Series) with wireless capability compliant with the IEEE 802.11 standards ("Digi IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**40.**   Digi is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Digi IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Digi may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul St., Suite 2900, Dallas Texas 75201.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**41.**  Upon information and belief, Defendant Intel is a corporation organized and existing under the laws of Delaware with its principal place of business at 2200 Mission College Blvd., Santa Clara, California 95054-1549.

**Answer:**  The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**42.**  Intel designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, Intel® WiFi Products such as Intel® Centrino® Advanced-N + WiMax 6250, Intel® Centrino® Advanced-N 6205, Intel® Centrino® Advanced-N 6230, Intel® Centrino® Ultimate-N 6300 and Intel® Centrino® Advanced-N 6200 products, Intel® Centrino® Advanced-N + WiMax 6150, Intel® Centrino® Wireless-N 100, Intel® Centrino® Wireless-N 1000, Intel® Centrino® Wireless-N 130, Intel® Centrino® Wireless-N 1030, Intel® PRO/Wireless 2200BG Network Connection, Intel® PRO/Wireless 2915ABG Network Connection, Intel® PRO/Wireless 3945ABG Network Connection, Intel® PRO/Wireless 2011 LAN Access Point, Intel® PRO/Wireless 2011B LAN Access Point, Intel® PRO/Wireless 2011 LAN PC Card, Intel Pro/Wireless 2100 LAN MiniPCI Adapters Types 3B & 3A, Intel® WiFi Link 5300 and Intel® WiFi Link 5100 products, Intel® WiMax/WiFi Link 5350 and Intel® WiMax/WiFi Link 5150 products, and Intel® Wireless WiFi Link 4965AGN) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Intel IEEE 802.11 devices").

**Answer:**  The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**43.**  Intel is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Intel IEEE 802.11 devices that infringe the

patent claims involved in this action or by transacting other business in this District. Intel may be served with process by serving its registered agent, CT Corporation System at 350 N. St. Paul Street, Dallas, Texas 75201.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

44.   Upon information and belief, Defendant Atheros is a corporation organized and existing under the laws of Delaware with its principal place of business at 5480 Great America Pkwy., Santa Clara, California 95054.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

45.   Atheros designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, Atheros Align® Technology (AR6103, AR9002UB-1NGB, AR9002WB-1NGCD, AR9004WB-1NG, AR9271, AR9485 and AR9285), XSPAN® Technology (including, without limitation AR9280+AR7010, AR9287+AR7010, AR7161, AR9002WB-2NG, AR9280, AR9287, AR9380, AR9382, AR9390, and AR9392), and ROCm® Platform and/or Technology (including, without limitation, AR 1511, AR3001, AR3002, AR3011, AR3012, AR6002, AR6003, AR6004, AR6005, and AR6102)) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Atheros IEEE 802.11 devices").

**Answer:**   The Murata Parties admit that one or more of the Murata Parties have purchased Atheros products, including AR6002 and AR6003.  The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore deny them.

**46.**   Atheros is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Atheros IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Atheros may be served with process by serving its registered agent, LexisNexis Document Solutions Inc. at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

   **Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**47.**   Upon information and belief, Defendant Marvell is a corporation organized and existing under the laws of California with its principal place of business at 5488 Marvell Ln., Santa Clara, California 95054.

   **Answer:** The Murata Parties lack knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph, and therefore

deny them.

**48.**   Marvell designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits, circuit boards (including, without limitation, 88W8366, 88W8686, 88W8688, 88W8786, 88W8786u, Avastar 88W8797, Avastar 88W8787, Avastar 88W8790, Avastar 88W8764, Avastar 88W8782, and Avastar 88W8782U) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Marvell IEEE 802.11 devices").

   **Answer:** The Murata Parties admit that one or more of the Murata

Parties have purchased Marvell products, including 88W8686, 88W8688 and

88W8787.  The Murata Parties lack knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in this paragraph, and

therefore deny them.

**49.**   Marvell is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Marvell IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Marvell may be served with process by serving its registered agent, CT Corporation System at 350 N. St. Paul Street, Dallas, Texas 75201.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**50.**   Upon information and belief, Defendant Realtek, is a corporation organized and existing under the laws of Taiwan with its principal place of business at No. 2 Innovation Road 11, Hsinchu Science Place, Hsinchu 300, Taiwan, R.O.C.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**51.**   Realtek designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, RTL8180L, RTL8181, RTL8185L, RTL8186/RTL8186P, RTL8187, RTL8187L, RTL8187SE, RTL8187CE, RTL8187CE-VAU, RTL8188CUS, RTL8188RE, RTL8188RU, RTL8188SU, RTL8190-GR, RTL8191RE, RTL8191 SE-VA2, RTL8191 SU, RTL8192CE-VA4, RTL8192CU, RTL8192E, RTL8192SE, RTL8192SU, RTL8192U, RTL8225, RTL8255, RTL8256, and RTL860/RTL8270) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "Realtek IEEE 802.11 devices").

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**52.**    Realtek is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Realtek IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Realtek may be served with process by serving its registered agent, Chunye Kuang, 4790 Irvine Blvd., St. 105-170, Irvine, California 92620.

**Answer:**    The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**53.**    Upon information and belief, Defendant Ralink, is a corporation organized and existing under the laws of Taiwan with its principal place of business at 5F, No. 5, Tai-Yuen 1st St., Jhubei City, HsinChu Hsien, 30265, Taiwan, R.O.C.

**Answer:**    The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**54.**    Ralink designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, Wi-Fi Networking products (including, without limitation, RT3883, RT3662, RT3350, RT3052, RT3050, RT2880, RT3370, RT3572, RT3072, RT3071, RT3070, RT2870, RT2770, RT2571W, RT3562, RT3062, RT2860, RT2661, RT2561 S, and RT2561), Wi-Fi for PC products (including, without limitation, RT5390, RT3090BC4, RT3593, RT3390, RT3592, RT3092, RT3090, RT2890, RT2790, RT3370, RT3070, RT2571W, and RT3090BC4), Wi-Fi for Consumer Electronics products (including, without limitation, RT3883, RT3662, RT3052, RT3050, RT2880, RT3572, RT3072, RT3071, RT3070, RT2870, RT3562, and RT3062) and ASDL Wi-Fi Gateway products (including, without limitation, TC3162U, TC30865, and TC2206)) used and/or designed for use in routers, personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11

standards (hereinafter "Ralink IEEE 802.11 devices").

**Answer:**   The Murata Parties admit that one or more of the Murata Parties have purchased Ralink products, including RT2860.   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore deny them.

55.   Ralink is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale Ralink IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District. Ralink may be served with process by serving its registered agent, Ralink Technology Corporation (USA), 20833 Stevens Creek Blvd., St. 200, Cupertino, California 95014.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

56.   Upon information and belief, Defendant CSR plc is a corporation organized and existing under the laws of England with its principal place of business at Churchill House, Cambridge Business Park, Cowley Road, Cambridge, CB4 0WZ, United Kingdom. Upon information and belief, Defendant CSR also has a main office at 2425 North Central Expressway, Suite 1000, Richardson, Texas 75080.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

57.   CSR designs, markets, uses, manufactures, imports, sells, and/or offers for sale integrated circuits and/or circuit boards (including, without limitation, CSR9000 and UniFi® CSR6026) used and/or designed for use in routers,

personal computers, smart phones, game consoles, and/or other products, with wireless capability compliant with the IEEE 802.11 standards (hereinafter "CSR IEEE 802.11 devices").

> **Answer:**   The Murata Parties admit that one or more of the Murata Parties have purchased CSR products, including CSR9000.   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore deny them.

**58.**   CSR is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale CSR IEEE 802.11 devices that infringe the patent claims involved in this action or by transacting other business in this District.

> **Answer:**    The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

## JURISDICTION AND VENUE

**59.**   This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1338(a).

> **Answer:**   The Murata Parties admit that the Complaint purports to be an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, and that this Court has jurisdiction over the subject matter of the Complaint under 28 U.S.C. §§ 1331 and 1338(a), but deny that Plaintiff is entitled to any relief.   Except as expressly admitted, the Murata Parties deny any remaining allegations set forth in this paragraph.

**60.**    Venue is proper in the Marshall Division of the Eastern District of Texas under 28 U.S.C. §§ 1391(b)-(d) and 1400(b).

**Answer:**    Denied.   However, the Murata Parties will not challenge venue at this time.

**61.**    This Court has personal jurisdiction over Dell. Dell has established minimum contacts with the State of Texas. Dell, directly and/or through third-party manufactures, manufactures or assembles Dell IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Dell, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Dell, directly and/or through their distribution networks, regularly place Dell IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Dell has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Dell IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Dell has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Dell has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Dell would not offend traditional notions of fair play and substantial justice.

**Answer:**    The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**62.**    This Court has personal jurisdiction over RIM. RIM has established minimum contacts with the State of Texas. RIM, directly and/or through third-party manufactures, manufactures or assembles RIM IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. RIM, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of

MOSAID's patents in the Eastern District of Texas. Additionally, RIM, directly and/or through their distribution networks, regularly place RIM IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. RIM has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. RIM IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. RIM has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. RIM has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over RIM would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**63.**   This Court has personal jurisdiction over Wasp. Wasp has established minimum contacts with the State of Texas. Wasp, directly and/or through third-party manufactures, manufactures or assembles Wasp IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Wasp, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Wasp, directly and/or through their distribution networks, regularly place Wasp IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Wasp has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Wasp IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Wasp has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Wasp has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Wasp would not offend traditional notions of fair play and substantial justice.

**Answer:**    The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**64.**   This Court has personal jurisdiction over Venture Research. Venture Research has established minimum contacts with the State of Texas. Venture Research, directly and/or through third-party manufactures, manufactures or assembles Venture Research IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Venture Research, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Venture Research, directly and/or through their distribution networks, regularly place Venture Research IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Venture Research has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Venture Research IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Venture Research has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Venture Research has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Venture Research would not offend traditional notions of fair play and substantial justice.

   **Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**65.**   This Court has personal jurisdiction over Huawei. Huawei has established minimum contacts with the State of Texas. Huawei, directly and/or through third-party manufactures, manufactures or assembles Huawei IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Huawei, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Huawei, directly and/or through their distribution networks, regularly place Huawei IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Huawei has purposefully and voluntarily sold one

or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Huawei IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Huawei has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Huawei has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Huawei would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient

to form a belief as to the truth of the allegations in this paragraph, and

therefore deny them.

**66.**   This Court has personal jurisdiction over Murata. Murata has established minimum contacts with the State of Texas. Murata, directly and/or through third-party manufactures, manufactures or assembles Murata IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Murata, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Murata, directly and/or through their distribution networks, regularly place Murata IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Murata has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Murata IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Murata has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Murata has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Murata would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties deny that this Court has personal

jurisdiction over Murata Manufacturing Co., Ltd. or that it has established

minimum contacts with the State of Texas.   The Murata Parties admit that

Murata Manufacturing Co., Ltd. may have, outside the United States, indirectly

manufactured and/or purchased from third-parties products that may be compliant with some aspects of 802.11 standards, and sold certain products to customers in the United States, but deny that Murata Manufacturing Co., Ltd. has offered for sale, sold, purchased, or used said devices within the Eastern District of Texas.  The Murata Parties lack knowledge sufficient to form a belief as to whether such products have been offered for sale, sold, purchased, or used by third parties within the Eastern District of Texas and therefore deny any such allegations.  The Murata Parties deny the allegations that Murata Manufacturing Co., Ltd. has purposefully availed itself of the benefits of the State of Texas and/or that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.  However the Murata Parties will not challenge personal jurisdiction over Murata Manufacturing Co., Ltd. at this time.

The Murata Parties admit that this Court may exercise personal jurisdiction over Murata Electronics North America, Inc.   The Murata Parties deny the allegation that Murata Electronics North America, Inc., manufactures or assembles any devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas.

The Murata Parties admit that this Court may exercise personal jurisdiction over SyChip, L.L.C.  The Murata Parties admit that SyChip, Inc. in the past manufactured a limited number of products compliant with some aspects of 802.11 standards for internal analysis and promotion.  The Murata parties admit that some products compliant with some aspects of 802.11

standards may have been offered for sale and/or sold by SyChip, Inc. and purchased by third parties within the Eastern District of Texas.  The Murata Parties lack knowledge sufficient to form a belief as to whether such products have been used within the Eastern District of Texas and therefore deny such allegation.

The Murata Parties deny the allegations that they ship, distribute, offer for sale, sell, and advertise products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas.  The Murata Parties deny that they have committed any acts of infringement in this judicial district, the State of Texas, or any judicial district or state.

The Murata Parties admit the allegations that one or more of the Murata Parties, directly and/or through their distribution networks, regularly place Murata IEEE 802.11 devices within the stream of commerce.  The Murata Parties admit that SyChip, Inc. and/or Murata Electronics North America have done so with the knowledge and/or understanding that such products might be sold in the Eastern District of Texas.  The Murata Parties admit that SyChip, Inc. and/or Murata Electronics North America have sold products with the expectation that they might be purchased by consumers in the Eastern District of Texas.  SyChip, L.L.C. denies that it manufactures, sells, or offers for sale any Murata 802.11 products and/or places such products within the stream of commerce.

Except as expressly admitted, the Murata Parties deny any remaining allegations set forth in this paragraph.

**67.**   This Court has personal jurisdiction over Wistron. Wistron has established minimum contacts with the State of Texas. Wistron, directly and/or through third-party manufactures, manufactures or assembles Wistron IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Wistron, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Wistron, directly and/or through their distribution networks, regularly place Wistron IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Wistron has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Wistron IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Wistron has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Wistron has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Wistron would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**68.**   This Court has personal jurisdiction over ASUS. ASUS has established minimum contacts with the State of Texas. ASUS, directly and/or through third-party manufactures, manufactures or assembles ASUS IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. ASUS, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, ASUS, directly and/or through their distribution networks, regularly place ASUS IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. ASUS has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. ASUS IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. ASUS has

committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. ASUS has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over ASUS would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

69.    This Court has personal jurisdiction over Lexmark. Lexmark has established minimum contacts with the State of Texas. Lexmark, directly and/or through third-party manufactures, manufactures or assembles Lexmark IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Lexmark, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Lexmark, directly and/or through their distribution networks, regularly place Lexmark IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Lexmark has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Lexmark IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Lexmark has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Lexmark has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Lexmark would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

70.    This Court has personal jurisdiction over Canon. Canon has established minimum contacts with the State of Texas. Canon, directly and/or through third-party manufactures, manufactures or assembles Canon IEEE 802.11

devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Canon, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Canon, directly and/or through their distribution networks, regularly place Canon IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Canon has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Canon IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Canon has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Canon has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Canon would not offend traditional notions of fair play and substantial justice.

**Answer:** The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**71.** This Court has personal jurisdiction over Digi. Digi has established minimum contacts with the State of Texas. Digi, directly and/or through third-party manufactures, manufactures or assembles Digi IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Digi, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Digi, directly and/or through their distribution networks, regularly place Digi IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Digi has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Digi IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Digi has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Digi has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Digi would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

72.   This Court has personal jurisdiction over Intel. Intel has established minimum contacts with the State of Texas. Intel, directly and/or through third-party manufactures, manufactures or assembles Intel IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Intel, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Intel, directly and/or through their distribution networks, regularly place Intel IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Intel has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Intel IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Intel has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Intel has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Intel would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

73.   This Court has personal jurisdiction over Atheros. Atheros has established minimum contacts with the State of Texas. Atheros, directly and/or through third-party manufactures, manufactures or assembles Atheros IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Atheros, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Atheros, directly and/or through their distribution networks, regularly place Atheros IEEE 802.11 devices within the stream of commerce,

with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Atheros has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Atheros IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Atheros has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Atheros has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Atheros would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**74.**   This Court has personal jurisdiction over Marvell. Marvell has established minimum contacts with the State of Texas. Marvell, directly and/or through third-party manufactures, manufactures or assembles Marvell IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Marvell, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Marvell, directly and/or through their distribution networks, regularly place Marvell IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Marvell has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Marvell IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Marvell has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Marvell has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Marvell would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**75.**   This Court has personal jurisdiction over Realtek. Realtek has established minimum contacts with the State of Texas. Realtek, directly and/or through third-party manufactures, manufactures or assembles Realtek IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Realtek, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Realtek, directly and/or through their distribution networks, regularly place Realtek IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Realtek has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Realtek IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. Realtek has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Realtek has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Realtek would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**76.**   This Court has personal jurisdiction over Ralink. Ralink has established minimum contacts with the State of Texas. Ralink, directly and/or through third-party manufactures, manufactures or assembles Ralink IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. Ralink, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, Ralink, directly and/or through their distribution networks, regularly place Ralink IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. Ralink has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. Ralink IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of

Texas. Ralink has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. Ralink has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over Ralink would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**77.**   This Court has personal jurisdiction over CSR. CSR has established minimum contacts with the State of Texas. CSR, directly and/or through third-party manufactures, manufactures or assembles CSR IEEE 802.11 devices that are and have been offered for sale, sold, purchased, and used within the Eastern District of Texas. CSR, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises its products or services that fall within one or more claims of MOSAID's patents in the Eastern District of Texas. Additionally, CSR, directly and/or through their distribution networks, regularly place CSR IEEE 802.11 devices within the stream of commerce, with the knowledge and/or understanding that such products will be sold in the Eastern District of Texas. CSR has purposefully and voluntarily sold one or more of its infringing products with the expectation that they will be purchased by consumers in the Eastern District of Texas. CSR IEEE 802.11 devices have been and continue to be purchased by consumers in the Eastern District of Texas. CSR has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas. CSR has purposefully availed itself of the benefits of the State of Texas and the exercise of jurisdiction over CSR would not offend traditional notions of fair play and substantial justice.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**PATENT INFRINGEMENT**

**78.**   MOSAID incorporates by reference paragraphs 1–77 as if fully set forth herein.

- 38 -

**Answer:**    The Murata Parties incorporate by reference their answers to the allegations of paragraphs 1 through 77 as if fully set forth herein.

**79.**    On July 14, 1992, the United States Patent and Trademark Office ("USPTO") duly a legally issued the '006 Patent entitled "Carrier Detection For A Wireless Local Area Network" with Adriaan Kamerman and Hans van Driest, as the named inventors after full and fair examination. MOSAID is the assignee of all rights, title, and interest in the '006 Patent and possesses all rights of recovery under the '006 Patent, including the right to recover damages for past infringement.

**Answer:**    The Murata Parties admit on information and belief that, on July 14, 1992, the United States Patent and Trademark Office ("USPTO") issued the '006 patent entitled "Carrier Detection For A Wireless Local Area Network" and that Adriaan Kamerman and Hans van Diest are named as inventors of the '006 patent.  Upon information and belief, the Murata Parties deny that MOSAID possesses all rights, title, and interest in the '006 Patent and possesses all rights of recovery under the '006 Patent.  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**80.**    On September 29, 1992, the USPTO duly and legally issued the '920 Patent entitled "Radio LAN Station With Improved Frame Delimiter Detection In A Spread Spectrum Environment" with Johannes P. N. Haagh, Hans van Driest, and Gerrit Smit, as the named inventors after full and fair examination. MOSAID is the assignee of all rights, title, and interest in the '920 Patent and possesses all rights of recovery under the '920 Patent, including the right to recover damages for past infringement.

**Answer:**    The Murata Parties admit on information and belief that, on

September 29, 1992, the USPTO issued the '920 patent entitled "Radio LAN Station With Improved Frame Delimiter Detection In A Spread Spectrum Environment" and that Johannes P. N. Haagh, Hans van Diest, and Gerrit Smit are named as inventors of the '920 patent.  Upon information and belief, the Murata Parties deny that MOSAID possesses all rights, title, and interest in the '920 Patent and possesses all rights of recovery under the '920 Patent.  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**81.**   On June 6, 1995, the USPTO duly and legally issued the '887 Patent entitled "Medium Access Protocol For Wireless Local Area Network" with Wilhelmus J. M. Diepstraten and Hendrik van Bokhorst, as the named inventors after full and fair examination. MOSAID is the assignee of all rights, title, and interest in the '887 Patent and possesses all rights of recovery under the '887 Patent, including the right to recover damages for past infringement.

**Answer:**   The Murata Parties admit on information and belief that, on June 6, 1995, the USPTO issued the '887 patent entitled "Medium Access Protocol For Wireless Local Area Network" and that Wilhelmus J. M. Diepstraten and Hendrik van Bokhorst are named as inventors of the '887 patent.  Upon information and belief, the Murata Parties deny that MOSAID possesses all rights, title, and interest in the '887 Patent and possesses all rights of recovery under the '887 Patent.  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**82.**   On January 6, 1998, the USPTO duly and legally issued the '428 Patent entitled "Multirate Wireless Data Communication System" with Jan Boer, Wilhelmus Josephus Diepstraten, Adriaan Kamerman, Hendrik van Bokhorst, and Hans van Driest, as the named inventors after full and fair examination. MOSAID is the assignee of all rights and interest in the '428 Patent and possesses all rights of recovery under the '428 Patent, including the right to recover damages for past infringement.

**Answer:**   The Murata Parties admit on information and belief that, on

January 6, 1998, the USPTO issued the '428 patent entitled "Multirate Wireless

Data Communication System" and that Jan Boer, Wilhelmus Josephus

Diepstraten, Adriaan Kamerman, Hendrik van Bokhorst, and Hans van Diest

are named as inventors of the '428 patent.   Upon information and belief, the

Murata Parties deny that MOSAID possesses all rights, title, and interest in the

'428 Patent and possesses all rights of recovery under the '428 Patent.   The

Murata Parties are without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations set forth in this paragraph, and

therefore deny them.

**83.**   On May 13, 2003, the USPTO duly and legally issued the '786 Patent entitled "Orthogonal Frequency Division Multiplexing System With Selectable Rate" with Richard Van Nee as the named inventor after full and fair examination. MOSAID is the assignee of all rights and interest in the '786 Patent and possesses all rights of recovery under the '786 Patent, including the right to recover damages for past infringement.

**Answer:**   The Murata Parties admit on information and belief that, on

May 13, 2003, the USPTO issued the '786 patent entitled "Orthogonal

Frequency Division Multiplexing System With Selectable Rate" and that

Richard Van Nee is named as the inventor of the '786 patent.   Upon

information and belief, the Murata Parties deny that MOSAID possesses all

rights, title, and interest in the '786 Patent and possesses all rights of recovery under the '786 Patent.   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**84.**   On January 31, 2006, the USPTO duly and legally issued the '972 Patent entitled "Frequency Division Multiplexing System With Selectable Rate" with Richard Van Nee as the named inventor after full and fair examination. MOSAID is the assignee of all rights and interest in the '972 Patent and possesses all rights of recovery under the '972 Patent, including the right to recover damages for past infringement.

**Answer:**   The Murata Parties admit on information and belief that, on January 31, 2006, the USPTO issued the '972 patent entitled "Frequency Division Multiplexing System With Selectable Rate" and that Richard Van Nee is named as the inventor of the '972 patent.  Upon information and belief, the Murata Parties deny that MOSAID possesses all rights, title, and interest in the '972 Patent and possesses all rights of recovery under the '972 Patent.  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**85.**   The '006, '920, '887, '428, '786, and '972 Patents are collectively referred to herein as the "Patents-in-Suit."

**Answer:**   Admitted.

**86.**   Each of the Patents-in-Suit is valid and enforceable.

**Answer:**   Denied.

87.   Dell has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Dell IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Dell's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Dell's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

88.   Dell indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Dell provides Dell's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Dell's IEEE 802.11 devices. Accordingly, Dell indirectly infringes because Dell has been and is now actively inducing others, such as end users of Dell's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

89.   Dell also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Dell's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Dell offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-

infringing use.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**90.**   RIM has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its RIM IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. RIM's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. RIM's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**91.**   RIM indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). RIM provides RIM's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use RIM's IEEE 802.11 devices. Accordingly, RIM indirectly infringes because RIM has been and is now actively inducing others, such as end users of RIM's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**92.**   RIM also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of RIM's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because RIM

offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**93.**   Wasp has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Wasp IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Wasp's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Wasp's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**94.**   Wasp indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Wasp provides Wasp's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Wasp's IEEE 802.11 devices. Accordingly, Wasp indirectly infringes because Wasp has been and is now actively inducing others, such as end users of Wasp's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**95.**   Wasp also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Wasp's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Wasp offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**96.**   Venture Research has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Venture Research IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Venture Research's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Venture Research's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**97.**   Venture Research indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Venture Research provides Venture Research's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Venture Research's IEEE 802.11 devices. Accordingly, Venture Research indirectly infringes because Venture Research has been and is now actively inducing others, such as end users of Venture Research's IEEE 802.11 devices,

to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**98.**   Venture Research also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Venture Research's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Venture Research offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**99.**   Huawei has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Huawei IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Huawei's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Huawei's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**100.** Huawei indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Huawei provides Huawei's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Huawei's IEEE 802.11 devices. Accordingly, Huawei indirectly infringes because Huawei has been and is now actively inducing others, such as end users of Huawei's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**101.** Huawei also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Huawei's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Huawei offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore deny them.

**102.** Murata has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Murata IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Murata's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Murata's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   Denied.

**103.** Murata indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Murata provides Murata's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Murata's IEEE 802.11 devices. Accordingly, Murata indirectly infringes because Murata has been and is now actively inducing others, such as end users of Murata's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

> **Answer:**   Denied.

**104.** Murata also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Murata's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Murata offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

> **Answer:**   Denied.

**105.** Wistron has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Wistron IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Wistron's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Wistron's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

> **Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**106.** Wistron indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Wistron provides Wistron's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Wistron's IEEE 802.11 devices. Accordingly, Wistron indirectly infringes because Wistron has been and is now actively inducing others, such as end users of Wistron's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:** The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**107.** Wistron also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Wistron's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Wistron offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:** The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**108.** ASUS has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its ASUS IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. ASUS's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. ASUS's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:** The Murata Parties are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**109.** ASUS indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). ASUS provides ASUS's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use ASUS's IEEE 802.11 devices. Accordingly, ASUS indirectly infringes because ASUS has been and is now actively inducing others, such as end users of ASUS's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**110.** ASUS also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of ASUS's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because ASUS offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**111.** Lexmark has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Lexmark IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Lexmark's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Lexmark's IEEE 802.11

devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**112.** Lexmark indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Lexmark provides Lexmark's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Lexmark's IEEE 802.11 devices. Accordingly, Lexmark indirectly infringes because Lexmark has been and is now actively inducing others, such as end users of Lexmark's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**113.** Lexmark also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Lexmark's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Lexmark offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**114.** Canon has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Canon IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Canon's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Canon's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:** The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**115.** Canon indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Canon provides Canon's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Canon's IEEE 802.11 devices. Accordingly, Canon indirectly infringes because Canon has been and is now actively inducing others, such as end users of Canon's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:** The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**116.** Canon also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Canon's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Canon offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:** The Murata Parties are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**117.** Digi has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Digi IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Digi's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Digi's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

 **Answer:**  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**118.** Digi indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Digi provides Digi's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Digi's IEEE 802.11 devices. Accordingly, Digi indirectly infringes because Digi has been and is now actively inducing others, such as end users of Digi's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

 **Answer:**  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**119.** Digi also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Digi's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Digi offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially

made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**120.** Intel has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Intel IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Intel's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Intel's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**121.** Intel indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Intel provides Intel's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Intel's IEEE 802.11 devices. Accordingly, Intel indirectly infringes because Intel has been and is now actively inducing others, such as end users of Intel's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**122.** Intel also indirectly infringes the Patents-in-Suit by contributing to

infringement by consultants, companies, and/or end-user customers of Intel's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Intel offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**123.**   Atheros has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Atheros IEEE 802.11 devices that practice or embody one or more claims of the Patents-in- Suit. Atheros's IEEE 802.11 devices practice at least one of the claims of the Patents-in- Suit. Atheros's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**124.**   Atheros indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Atheros provides Atheros's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Atheros's IEEE 802.11 devices. Accordingly, Atheros indirectly infringes because Atheros has been and is now actively inducing others, such as end users of Atheros's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth

in this paragraph, and therefore deny them.

**125.** Atheros also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Atheros's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Atheros offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:** The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**126.** Marvell has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Marvell IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Marvell's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Marvell's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:** The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**127.** Marvell indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Marvell provides Marvell's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Marvell's IEEE 802.11 devices. Accordingly, Marvell indirectly infringes because Marvell has been and is now actively inducing others, such as end users of Marvell's IEEE 802.11 devices,

to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**128.**  Marvell also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Marvell's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Marvell offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**129.**  Realtek has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Realtek IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Realtek's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Realtek's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**  The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**130.** Realtek indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Realtek provides Realtek's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Realtek's IEEE 802.11 devices. Accordingly, Realtek indirectly infringes because Realtek has been and is now actively inducing others, such as end users of Realtek's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**131.** Realtek also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Realtek's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Realtek offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**132.** Ralink has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its Ralink IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. Ralink's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. Ralink's IEEE 802.11 devices infringes at least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**133.** Ralink indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). Ralink provides Ralink's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use Ralink's IEEE 802.11 devices. Accordingly, Ralink indirectly infringes because Ralink has been and is now actively inducing others, such as end users of Ralink's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

    **Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**134.** Ralink also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of Ralink's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because Ralink offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

    **Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**135.** CSR has been and is now directly infringing the Patents-in-Suit by making, using, selling, offering for sale, importing into the United States, and/or exporting its CSR IEEE 802.11 devices that practice or embody one or more claims of the Patents-in-Suit. CSR's IEEE 802.11 devices practice at least one of the claims of the Patents-in-Suit. CSR's IEEE 802.11 devices infringes at

least one of the claims of the Patents-in-Suit, either alone or when integrated with other computers, laptops, printers, home theater PC, hubs, access points, routers, game consoles, and/or other products.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**136.** CSR indirectly infringes the Patents-in-Suit by inducement of infringement in accordance with 35 U.S.C. § 271(b). CSR provides CSR's IEEE 802.11 devices to consultants, companies, and/or end-user customers in the United States who, in turn, install and use CSR's IEEE 802.11 devices. Accordingly, CSR indirectly infringes because CSR has been and is now actively inducing others, such as end users of CSR's IEEE 802.11 devices, to directly infringe one or more claims of the Patents-in-Suit.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**137.** CSR also indirectly infringes the Patents-in-Suit by contributing to infringement by consultants, companies, and/or end-user customers of CSR's IEEE 802.11 devices, in accordance with 35 U.S.C. § 271(c), because CSR offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**Answer:**   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph, and therefore deny them.

**138.** Defendants have infringed and/or continue to infringe one or more claims of the Patents-in-Suit as set forth above. Defendants are liable for direct infringement, as well as indirect infringement by way of inducement and/or contributory infringement, for each of the Patents-in-Suit pursuant to 35 U.S.C. § 271 (a), (b), (c), and/or (f) as set forth above. For MOSAID's claims of indirect infringement, Defendants' consultants, companies, and/or end-user customers are direct infringers of the Patents-in-Suit.

**Answer:** To the extent the allegations of this paragraph refer to the Murata Parties, denied. The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph to the extent they pertain to any other Defendant, and therefore deny them.

**139.** Defendants' acts of infringement have caused damage to MOSAID. MOSAID is entitled to recover from Defendants the damages sustained by MOSAID as a result of Defendants' wrongful acts in an amount subject to proof at trial. In addition, MOSAID has been irreparably harmed by the Defendants' acts of infringement of the Patents-in-Suit, and will continue to be harmed unless and until Defendants' acts of infringement are enjoined by this Court. Defendants' infringement of MOSAID's rights under the Patents-in-Suit will continue to damage MOSAID's business, causing irreparable injury and damage, for which there is no adequate remedy of law, unless restrained and enjoined by this Court. The hardships that would be imposed upon Defendants by an injunction are less than those faced by MOSAID should an injunction not issue. Furthermore, the public interest would be served by issuance of an injunction.

**Answer:** To the extent the allegations of this paragraph refer to the Murata Parties, denied. The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph to the extent they pertain to any other Defendant, and therefore deny them.

**140.** Defendants have received actual notice of infringement.

**Answer:**   The Murata Parties admit that they received copies of the Complaint filed by MOSAID after it was filed.  The Murata Parties admit that SyChip, Inc. received some communications from MOSAID concerning alleged infringement of some, but not all, of the Patents-in-Suit by certain of its customers and further answer that MOSAID ceased communications with SyChip, Inc. in January 2010, approximately 14 months prior to initiating this litigation. The Murata Parties deny the allegation that Murata Manufacturing Co., Ltd. and Murata Electronics North America, Inc. received actual notice of MOSAID's allegations of infringement against them prior to this litigation. Except as expressly admitted, to the extent any remaining allegations set forth in this paragraph refer to the Murata Parties, the Murata Parties deny them. The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph to the extent they pertain to any other Defendant, and therefore deny them.

**141.** Defendants' infringement of the Patents-in-Suit is willful and deliberate entitling MOSAID to enhanced damages and to attorneys' fees incurred in prosecuting this action.

**Answer:**   To the extent the allegations of this paragraph refer to the Murata Parties, denied.   The Murata Parties are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in this paragraph to the extent they pertain to any other Defendant, and therefore deny them.

## DEMAND FOR JURY TRIAL

**142.** MOSAID hereby demands a trial by jury for all issues triable by a jury.

**Answer:**   The Murata Parties join Plaintiff's request for a trial by jury on all issues so triable.

\*     \*     \*

## DEFENSES (AFFIRMATIVE OR OTHERWISE)

The Murata Parties, by counsel, hereby plead and give notice of the following defenses, whether affirmative or otherwise:

### Defense No. 1:  Non-Infringement.

**143.** The Murata Parties do not infringe and have not infringed any claim of the Patents-in-Suit nor have they contributed to the infringement of or actively induced others to infringe the Patents-in-Suit.

### Defense No. 2:  No Willfulness.

**144.** The Murata Parties have not willfully infringed any claim of the Patents-in-Suit.

### Defense No.3: Invalidity.

**145.** One or more claims of the Patents-in-Suit is or may be invalid for failure to meet the requirements of the patent laws of the United States, including at least one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

### Defense No. 4: Laches, Waiver, and/or Estoppel.

**146.** Discovery may demonstrate evidence that Plaintiff's claims are barred, in whole or in part, by laches, waiver, and/or estoppel.

### Defense No. 5: License and Exhaustion.

**147.** Some or all of the Murata Parties' products are licensed under the Patents-in-Suit, and/or Plaintiff's rights under the Patents-in-Suit have been exhausted under the doctrine of patent exhaustion, as a result of licenses granted to the Murata Parties' predecessors, suppliers, and customers, including but not limited to Lucent, Broadcom, Texas Instruments, and Marvell.

### Defense No. 6: Limitations on Damages and Costs.

**148.** Plaintiff's recovery for alleged infringement of the Patents-in-Suit, if any, is limited to any alleged infringement committed no more than six years prior to the filing of its Complaint, pursuant to 35 U.S.C. § 286.

**149.** Plaintiff failed to provide adequate notice to the Murata Parties of alleged infringement and is thus barred, in whole or in part, under 35 U.S.C. § 287 from recovering damages prior to the date of the filing of the Complaint.

**150.** On information and belief, Plaintiff is barred, in whole or in part, from recovering damages under 35 U.S.C. § 287 because it and/or its licensees have not consistently marked products that allegedly practice one or more of the Patents-in-Suit.

**151.** Plaintiff is or may be barred by 35 U.S.C. § 288 from recovering costs

associated with its action.

## Defense No. 7: Unclean Hands.

**152.** Discovery may demonstrate evidence that Plaintiff is precluded and barred from recovery or damages or other relief, in whole or in part, by reason of unclean hands.

## Defense No. 8: Not Entitled to Injunction.

**153.** Plaintiff is not entitled to injunctive relief because it cannot prove (1) that it has suffered irreparable injury, (2) that there is no adequate remedy at law, (3) that a remedy in equity is warranted, and (4) that the public interest warrants an injunction.

*      *      *

## PRAYER FOR RELIEF

The Murata Parties respectfully pray in the alternative for the following relief:

1.      A judgment in favor of the Murata Parties and against the Plaintiff on all claims for relief and all defenses.

2.      A judgment finding this to be an exceptional case within the meaning of 35 U.S.C. § 285 and awarding the Murata Parties all of their attorney fees and expenses and costs.

3.      A judgment awarding the Murata Parties all other remedies, legal, equitable, or otherwise, which the Court deems just and warranted by the facts, evidence, and circumstances.

## DEMAND FOR JURY TRIAL

The Murata Parties hereby demand trial by jury as to all claims and issues so triable.

\*        \*        \*

## COUNTERCLAIMS

Counterclaim Plaintiffs, the Murata Parties, for their complaint against Counterclaim Defendant, MOSAID Technologies Inc. ("MOSAID"), allege as follows:

### Parties

**1.**     Murata Manufacturing Co., Ltd. is a Japanese corporation, having its principal place of business in Kyoto, Japan.

**2.**     Murata Electronics North America, Inc. is a Texas corporation, having its principal place of business in Smyrna, Georgia.

**3.**     SyChip, L.L.C. is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Plano, Texas.

**4.**     Upon information and belief, Plaintiff MOSAID Technologies Inc. is a corporation subject to the laws of Canada with its principal place of business at 11 Hines Road, Suite 203, Ottawa, Ontario Canada K2K 2X1. Plaintiff MOSAID's United States principal place of business is located at 101 E. Park

Blvd., Suite 600, Plano, Texas 75074.

## Jurisdiction and Venue

**5.**     This Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, 2201 and 2202.

**6.**     MOSAID is subject to personal jurisdiction in this judicial district at least due to its filing of the Complaint.

**7.**     To the extent this Court finds venue to be proper in this judicial district for the resolution of MOSAID's claims, venue would be proper pursuant to 28 U.S.C. §§ 1391 and 1400(b) to resolve the Murata Parties' counterclaims.

## Count I: Declaratory Judgment of
## Non-Infringement of the Patents-in-Suit

**8.**     The Murata Parties incorporate by reference the allegations contained in paragraphs 1 – 7 of their Counterclaims as if fully set forth herein.

**9.**     MOSAID filed a complaint against the Murata Parties and other defendants alleging that they have directly and indirectly infringed and continue to infringe U.S. Patent Nos. 5,131,006; 5,151,920; 5,422,887; 5,706,428; 6,563,786; and 6,992,972 (collectively, "Patents-in-Suit) by making, selling, using, offering to sell, and importing semiconductors and chip scale modules (including, without limitation, Wi-Fi™ 802.11 b/g/n, 802.11 b/g/n Bluetooth® v2.1 + EDR, and W-Fi 802.11 a/b/g/n Bluetooth® v2.1 + EDR).

**10.**     The Murata Parties are not infringing and have not infringed,

directly or indirectly, any claim of the Patents-in-Suit.

**11.**    The Murata Parties seek a declaratory judgment that they have not committed any acts of infringement of the Patents-in-Suit, either literally or under the doctrine of equivalents, pursuant to 28 U.S.C. § 2201.

## Count II: Declaratory Judgment of Invalidity of the Patents-in-Suit

**12.**    The Murata Parties incorporate by reference the allegations contained in paragraphs 1 – 11 of their Counterclaims as if fully set forth herein.

**13.**    One or more claims of the Patents-in-Suit is invalid for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112.

**14.**    The Murata Parties seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that the claims of the Patents-in-Suit are invalid.

## Count III: Breach of Contract – Third Party Beneficiary

**15.**    The Murata Parties incorporate by reference the allegations contained in paragraphs 1 – 14 of their Counterclaims as if fully set forth herein.

**16.**    Upon information and belief, prior to MOSAID purportedly obtaining all rights and interest in the Patents-in-Suit, various other entities

were the owners of the Patents-in-Suit, including, but not limited to, AT&T Corp., Lucent Technologies, Agere Systems Inc., and/or their subsidiaries and/or affiliates (collectively "Predecessors-in-Interest").

**17.**    MOSAID alleges that the Patents-in-Suit are essential to IEEE 802.11 standards and cover products that operate in compliance with IEEE 802.11 standards.

**18.**    Upon information and belief, the Predecessors-in-Interest openly and publicly submitted at least sixteen Letters of Assurance pursuant to Clause 6 of the IEEE Standards Board Bylaws that they would offer to license any of their patents essential to the applicable 802.11 standards to any person or entity on reasonable and non-discriminatory ("RAND") terms.

**19.**    For example, in a Letter of Assurance to the IEEE dated January 24, 2003, Agere Systems Inc. promised to grant a license on RAND terms to any patents required to practice the draft standard for IEEE 802.11g, including, ***but not limited to***, the '920, '428 and '786 patents of the Patents-in-Suit.  [*See* Ex. 1.]  As another example, in a Letter of Assurance to the IEEE dated September 4, 2003, Agere Systems Inc. promised to grant a license on RAND terms to any patents required to practice the draft standard for IEEE 802.11e, including, but not limited to, the '887 patent of the Patents-in-Suit. [*See* Ex. 2.]  Similarly, on or about September 13, 2004, Agere Systems Inc. promised to grant a license on RAND terms to any patents that include claims required to practice the 802.11n standard.  [*See* Ex. 3.]

**20.**    Upon information and belief, absent a licensing commitment on RAND terms from the Predecessors-in-Interest, the IEEE would have either revised the standards, employing alternative technologies instead, stopped working on the 802.11 protocols, or taken other actions.

**21.**    Upon information and belief, the Letters of Assurance, once provided, are irrevocable.

**22.**    Upon information and belief, the IEEE relied on the Predecessors-in-Interest's promises in developing, adopting, and implementing IEEE technical standards.  These standards now are implemented worldwide in a variety of electronic devices relating to the implementing of wireless local area network computer communications.

**23.**    Upon information and belief, the Predecessors-in-Interest's contracts with the IEEE were expressly intended to benefit all third-parties who practice patents that cover the 802.11 standards, including the Murata Parties to the extent that any of their devices practice 802.11 standards and are covered by patents subject to the Predecessors-in-Interest's contracts with the IEEE.

**24.**    Further, upon information and belief, third-party developers, including the Murata Parties to the extent any of their devices practice 802.11 standards and are covered by "essential" patents, relied upon the IEEE Standards Board Bylaws and promises made by IEEE Standards Board

- 71 -

participants, including the Predecessors-in-Interest, to offer licenses on RAND terms.   Third-party developers, including the Murata Parties to the extent any of their devices practice 802.11 standards and are covered by "essential" patents, developed products in reliance on the IEEE Standards Board Bylaws and promises made by IEEE Standards Board participants such as the Predecessors-in-Interest and with the expectation that they and/or any third-party developer would be offered a license, on RAND terms, to any "essential" patents held by IEEE Standards Board participants, including but not limited to the Predecessors-in-Interest, if in fact a license was necessary.

25.   MOSAID alleges that it is the assignee of all rights and interest in the Patents-in-Suit.

26.   Upon information and belief, MOSAID is bound by the terms of the contracts between the Predecessors-in-Interest and the IEEE because the IEEE requires that contracting parties, including but not limited to the Predecessors-in-Interest, cannot assign or otherwise transfer rights in patents subject to the contract with the intent of circumventing or negating any of the representations and commitments made.

27.   Specifically, according to section 6.2 of the IEEE Bylaws, the Predecessors-in-Interest agreed "(a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to

bind its assignees or transferees to agree to provide such notice as described in (a) and (b)."

**28.**    On information and belief, MOSAID gained whatever rights it has in the Patents-in-Suit with knowledge of the Predecessors-in-Interest's participation with IEEE and the resulting obligations.

**29.**    Based on MOSAID's own assertions, the Patents-in-Suit are essential to and cover the 802.11 standards.  To the extent that the Murata Parties make, use, offer to sell, or sell within the United States or import into the United States devices that practice the Patents-in-Suit, MOSAID's failure to offer the Murata Parties a license to the Patents-in-Suit at reasonable and non-discriminatory terms and its request for an injunction constitute breach of contract.

**30.**    As a result, the Murata Parties have suffered damages.

## Jury Demand

**31.**    The Murata Parties demand trial by jury on all claims and issues so triable.

## Prayer for Relief

Wherefore, the Murata Parties pray for judgment in their favor and against MOSAID and respectfully request the following relief:

1.    A judgment in favor of the Murata Parties and against the Plaintiff on all claims for relief and all defenses.

2.     A declaratory judgment that the Patents-in-Suit are not infringed by the Murata Parties.

3.     A declaratory judgment that the Patents-in-Suit are invalid.

4.     A judgment denying MOSAID's request for an injunction and awarding the Murata Parties, at their election, the opportunity to license the Patents-in-Suit on fair, reasonable, and non-discriminatory terms;

5.     A judgment finding this to be an exceptional case within the meaning of the Patent Act (including 35 U.S.C. § 285) and awarding the Murata Parties all of their attorney fees and expenses and costs.

6.     A judgment awarding the Murata Parties all other remedies, legal, equitable, or otherwise, which the Court deems just and warranted by the facts, evidence, and circumstances.

Dated:  13 June 2011                                    Respectfully submitted,

                                           /s/ Guy N. Harrison
                                    _____

                                    Guy N. Harrison
                                    State Bar No. 00000077
                                    **HARRISON LAW FIRM**
                                    217 N. Center Street
                                    Longview, Texas 75606
                                    903.758.7361
                                    guy@gnhlaw.com

                                    Patrick J. Kelleher
                                    Carrie A. Beyer
                                    **DRINKER BIDDLE & REATH LLP**
                                    191 N. Wacker Dr.  #3700
                                    Chicago, IL  60606
                                    312.569.1000
                                    patrick.kelleher@dbr.com

                                    **Attorneys for the Murata Parties**

CH01/ 25734427

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ Guy N. Harrison

Guy N. Harrison