**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MOSAID Technologies Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Dell, Inc. et al.,<br><br>Defendants. | Civil Action No.<br>2:11-cv-00179<br><br>**JURY TRIAL DEMANDED** |

**MOSAID TECHNOLOGIES INCORPORATED'S
<u>SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF</u>**

**I.     THE '786 / '972 PATENTS**

Defendants attempt to require the use of a "fallback rate" by rewriting claim language that does not require particular rates, but instead recites the number of modes—a "plurality," or "first" and "second." The problem with Defendants' position is highlighted by the undisputed fact that "mode at a fallback rate," the clause that Defendants seek to import, is not found in the patents. *See* Rep.[1] at 1; Op.[2] at 4. There is no basis for Defendants to rewrite the asserted claims, including apparatus claims, to require the recited modes to be used at a fallback rate.

Defendants attack *Agere* as involving "different defendants"[3] and being "rendered prior to *Phillips*" but do not explain why *Agere* would have been decided differently after *Phillips*. SurRep. (Dkt. 498-1) at 1. Defendants insist that *Agere* concerned only whether signaling modes were limited to transmission of a packet of data, but ignore that (i) the argument in *Agere* was that a packet of data was inherent in a "fallback mode," and (ii) *Agere* stated that a "fallback mode" is "found in the description of one preferred embodiment" and that "this invention is not limited to the preferred embodiment." Rep. at 1; Op. at 4-5 (quoting *Agere*).

With respect to Defendants' use of ellipses, MOSAID simply pointed out that Defendants' brief made it appear as if the patentee had stated that "frequency synchronization" itself was "plainly unrelated to the ideas of the invention" when the full quote shows that the patentee did not say that. Rep. at 2; SurRep. at 2. This is important because, in seeking to restrict an invention to a preferred embodiment as they attempt here, Defendants face the high hurdle of showing "words or expressions of manifest exclusion or restriction" that so restrict the

---

[1] MOSAID's Reply Claim Construction Brief, Dkt. 491.

[2] MOSAID's Opening Claim Construction Brief, Dkt. 459.

[3] MOSAID does not argue that *Agere* is *binding* on this Court, but that *Agere* shows that another court previously rejected a substantially similar argument concerning a "fallback mode."

invention.  *See, e.g.*, *Trading Techs. Int'l, Inc. v. Espeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010).  The full, unabridged quote shows that no such words or expressions were used.  MOSAID did not "accuse" Defendants of "attempt[ing] to mislead the Court."

## II. THE '920 PATENT

**"Non-Data Signal"**:  Defendants assert that "data and non-data signals must be transmitted with spreading codes" and then conclude that "different spreading codes must be used." SurRep. at 3.  The claim term to be construed, however, is "non-data signal," and there is nothing in the claim language regarding use of different spreading codes in transmission.

Defendants identified two portions of the specification that allegedly restrict the invention to transmission with different spreading codes:  '920 at 2:19-25, 6:58-7:9.  SurRep. at 3.  MOSAID showed that Defendants had combined two sentences ('920 at 2:19-25) or two paragraphs (6:58-7:9) with ellipses to combine "present invention" language with a reference to spreading codes.  Rep. at 2-3.  This is different from *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006), cited by Defendants, because in *Honeywell* the court identified four sentences that expressly identified a fuel filter as part of the invention.  Here, by contrast, when the entirety of Defendants' selected passages are read, there are no "words or expressions of manifest exclusion or restriction" that would require usage of "different spreading codes" to be read into the claim language.  *Trading Techs.*, 595 F.3d at 1352.

Finally, Defendants suggest that claim differentiation should not apply because of "claim 7's 'first' and 'second' 'receiving means' limitations."  SurRep. at 3.  In so doing, Defendants ignore the fact that claim 8 also includes first and second receiving means limitations, but only claim 8, not claim 7, recites first and second "spreading codes."  *See* '920 at claims 7-8.

**"First Receiving Means"**: Defendants again boldly assert that "receiver 115" must be

the corresponding structure because "'receiver 115' performs the claimed receiving function," apparently because it is called a "receiver." SurRep. at 4. But Defendants do not dispute that "receiving" is not the claimed function. Instead, the claimed function is "receiving data signals transmitted in said spread spectrum signal," and given that the spread spectrum signal is "effectively 'de-spread'" by the correlators, the components beyond the correlators do not receive a spread spectrum signal. Rep. at 4. Defendants incorrectly assert that MOSAID did not "cit[e] any support" for this point (*see, e.g.*, Rep. at 4), and then contend that MOSAID's assertion is "directly contrary to the patent" without disputing the patent's statement that the correlators "effectively 'de-spread'" the spread spectrum signal. SurRep. at 4.

**"Generally Orthogonal"**: Defendants suggest that MOSAID wrongly asserts that Defendants' construction incorrectly requires "measuring cross-talk of correlators rather than signals." SurRep. at 5. However, just as MOSAID stated, Defendants' proposed claim construction plainly refers to "cross-talk between the data and non-data correlators," and it was only after MOSAID pointed out the flaw in Defendants' construction that Defendants suggested that their claim construction instead should be read to mean "crosstalk between, i.e., *at the output of*, the correlators" even though their proposed construction does not actually say that. Rep. at 4 (emphasis added). Defendants' attempt to direct their own proposed construction towards crosstalk between "output" of correlators (*i.e.,* signals) as opposed to crosstalk between correlators shows that MOSAID's proposed construction, which would require minimum crosstalk between the non-data and data signals, is the proper one.

## III. '006 PATENT

**"Integrator And Storage Means . . . To Store Values"**: Defendants again ignore the fact that the claimed function, as agreed by the parties, is "storing values of integrated

representations of said plurality of signal samples." Rep. at 5. An integrator, however, integrates—it does not *store* values of *integrated* representations. *Id.* Defendants do not contest this point, which is fatal to their argument. But even if an "integrator" is to be interpreted pursuant to 35 U.S.C. § 112(6), the specification discloses an "integrator," not just a "leaky integrator." Rep. at 5-6. Defendants point to disclosures of leaky integrators (SurRep. at 6), but the point is that the specification discloses both integrators and leaky integrators. This point is reinforced by the doctrine of claim differentiation. Rep. at 5-6.

**"Spike Quality Determining Means"**: Defendants do not argue anything new with respect to this term. With respect to Defendants' attack on the doctrine of claim differentiation, MOSAID is not attempting to "omit" structure through its claim differentiation argument. As already explained, the example "look up table" shown at 5:16-47 of the '006 Patent is not required to be part of the circuit that performs the spike quality determination. Rep. at 6.

**"Determining A Spike Quality Value . . ."**: The issue here is simple: Defendants seek to change the claim language "based on" to "comparing." Rep. at 7-8. Defendants, however, cannot identify any "words or expressions of manifest exclusion or restriction" that would justify rewriting the claim language in this manner. *Trading Techs.*, 595 F.3d at 1352.

## IV. '887 PATENT

**"Means For Deferring Broadcasting Of A Third Data Frame"**: Defendant contend that a LAN controller suitable for the CSMA/CD protocol is required, but they do not dispute that there is nothing in the patent stating that a CSMA/CD protocol is necessary to perform the recited claim function, or that any particular structure from Figures 2, 3A, or 3B is required. *See* Rep. at 8. A LAN controller is the appropriate structure, not a LAN controller that must operate under a specific CSMA/CD protocol.

**"Means for Deferring, During A Predetermined Time Period"**: Defendants appear to agree that "the specification describes that the LAN controller generates a deferral time called 'TxGAP,' in addition to waiting a standard IFS period." *See* Rep. at 8. Defendants then inexplicably contend that the specific algorithm formula identified by Defendants must be used, but they do not identify anything compelling use of such an algorithm. SurRep. at 8.

**"Delaying Transmission Of A Third Data Frame"**: Defendants have not identified anything requiring the words "after every transmission" to be written into the claims. Defendants identify one portion of the specification allegedly containing restrictive language, but cannot dispute that they combine portions of two sentences to make it appear that the invention specifically requires forcing a TxGAP silence period "after every transmission." SurRep. at 9. The specification does not so require, and the Defendants should not be permitted to rewrite the claims. *Trading Techs*., 595 F.3d at 1352.

## V. '428 PATENT

MOSAID cited *Tehrani v. Hamilton Med., Inc*., 331 F.3d 1355 (Fed. Cir. 2003) to directly rebut the argument, raised by Defendants in their claim construction brief, that a length segment allegedly is not "representative" or "representing" of a time measurement if it is a "*direct* statement of the time." Rep. at 10. *Tehrani* refutes Defendants' argument because the Federal Circuit determined that "representing" means that "the first item must be *directly* related to and stand for, or be a reasonable proxy for, the latter item." 331 F.3d at 1361 (emphasis added). Dkt. 491 at 10. Defendants' sur-reply does not help Defendants on this key point because they do not, and cannot, dispute that the Federal Circuit interpreted "representing" to include "direct[]" relationships, contrary to the argument presented by Defendants in their claim construction brief.

DATED: April 15, 2013

                              Respectfully submitted,

By: */s/ Theodore Stevenson, III*
  THEODORE STEVENSON, III, LEAD ATTORNEY
    Texas State Bar No. 19196650
    tstevenson@mckoolsmith.com
  DAVID SOCHIA
    Texas State Bar No. 00797470
    dsochia@mckoolsmith.com
  STEVEN CALLAHAN
    Texas State Bar No. 24053122
    scallahan@mckoolsmith.com
  **MCKOOL SMITH, P.C.**
  300 Crescent Court, Suite 1500
  Dallas, Texas 75201
  Telephone: (214) 978-4000
  Telecopier: (214) 978-4044

  JOHN M. SHUMAKER
    Texas State Bar No. 24033069
    jshumaker@mckoolsmith.com
  **MCKOOL SMITH, P.C.**
  300 W. 6th Street, Suite 1700
  Austin, Texas 78701
  Telephone: (512) 692-8700
  Telecopier: (512) 692-8744

  SAMUEL F. BAXTER
    Texas State Bar No. 01938000
    sbaxter@mckoolsmith.com
  **MCKOOL SMITH, P.C.**
  104 East Houston, Suite 300
  Marshall, Texas 75670
  Telephone: (903) 923-9001
  Telecopier: (903) 927-2622

  *Counsel for Plaintiff MOSAID Technologies Incorporated*

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on April 15, 2013. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

By: *John Shumaker*
JOHN SHUMAKER