**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

MOSAID Technologies Incorporated,

      Plaintiff,

              v.

Dell, Inc. et al.,

      Defendants.

Civil Action No.
2:11-cv-00179

**JURY TRIAL DEMANDED**

**MOSAID TECHNOLOGIES INCORPORATED'S
OBJECTIONS TO, AND MOTION FOR RECONSIDERATION OF,
<u>MAGISTRATE JUDGE'S MEMORANDUM OPINION AND ORDER</u>**

## TABLE OF CONTENTS

I.      Introduction ...................................................................................................................1

II.     Legal Standard .............................................................................................................2

III.    Argument .....................................................................................................................2

A.      The Court Should Modify The Magistrate Judge's Construction Of
        The "Plurality Of Signaling Modes" Terms Found In The '786
        And '972 Patents ..........................................................................................................2

        1.      The Order incorrectly includes in the claim
                construction a phrase ("at a symbol rate") that does
                not appear in the patent specification and was not
                included by any party in its proposed construction ...................................3

        2.      The Order relies on the incorrect inclusion of "at a
                symbol rate" to proffer an incorrect factual
                conclusion regarding "a frame's preamble and its
                payload" that is not part of the actual claim
                construction..................................................................................................4

B.      The Court Should Modify The Magistrate Judge's Construction Of
        "First Receiving Means" Because The Construction Misstates The
        Claimed Function ('920 Patent, claim 7) .....................................................................7

C.      The Court Should Modify The Magistrate Judge's Construction Of
        "Delaying Transmission Of A Third Data Frame From The First
        Station During A Second Time Period" Because The Construction
        Incorporates An Unnecessary Limitation ('887 Patent, claims 9-11)................................9

D.      MOSAID Objects To The Magistrate Judge's Construction Of
        Certain Other Claim Terms...........................................................................................10

        1.      "Non-data signal" ('920 Patent, claim 7)..................................................10

        2.      "Non-data signals being generally orthogonal to
                said data signals" ('920 Patent, claim 7)...................................................11

        3.      "Spike quality determining means…" ('006 Patent,
                claims 1-2) .................................................................................................11

        4.      "Carrier detection means…" ('006 Patent, claims 1-
                2) ................................................................................................................12

        5.      "Determining a spike quality value…" ('006 Patent,
                claims 12-14) ..............................................................................................13

i

6.    "Means for broadcasting. . . " ('887 Patent, claims 1
      and 7) ......................................................................................................14

7.    "Means for deferring, during a predetermined time
      period" ('887 Patent, claims 1 and 7) .........................................................14

8.    "Means for deferring broadcast of a third frame of
      information. . . " ('887 Patent, claims 1, 4, and 7-8) ................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*ACTV, Inc. v. Walt Disney Co*.,
    346 F.3d 1082 (Fed. Cir. 2003)...................................................................................7, 8

*Agere Systems Inc. v. Broadcom Corp*.,
    Civ. No. 03-cv-3138-BMS, 2004 U.S. Dist. LEXIS 14187 (E.D. Pa. July 20, 2004)..............2

*Alldread v. City of Grenada*,
    988 F.2d 1425 (5th Cir. 1993) ...................................................................................2

*Asyst Techs., Inc. v. Empak, Inc.*,
    268 F.3d 1364 (Fed. Cir. 2001)...............................................................................13, 15

*E-Pass Techs., Inc. v. 3 Com Corp*.,
    343 F.3d 1364 (Fed. Cir. 2003)..............................................................................4, 5, 9, 10

*Jurgens v. McKasy*,
    927 F.2d 1552 (Fed. Cir. 1991)...................................................................................7

*Phillips v. AWH Corp*.,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .......................................................................9, 11

*Sipco, LLC v. Abb, Inc.*,
    No. 6:11-CV-0048 2012 U.S. Dist. LEXIS 106659 (E.D. Tex. July 30, 2012) .....................15

*SmartPhone Techs. LLC v. Research in Motion Corp.*,
    No. 6:10-CV-74, 2012 U.S. Dist. LEXIS 19242 (E.D. Tex. Feb. 13, 2012) ..........................11

*SRI Int'l v. Matsushita Elec. Corp. of A*m.,
    775 F.2d 1107 (Fed. Cir. 1985)...................................................................................6

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co*.,
    442 F.3d 1322 (Fed. Cir. 2006)...................................................................................6

OTHER AUTHORITIES

Local Civil Rule 72(b) ...................................................................................1

E.D.Tex. L.R. 72...................................................................................2

Fed.R.Civ.P. 72(a) ...................................................................................2

Rule 72(a) of the Federal Rules of Civil Procedure...................................................................................1

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Civil Rule

72(b), Plaintiff MOSAID Technologies Incorporated objects to, and moves for reconsideration

of, the Magistrate Judge's Memorandum Opinion and Order regarding claim construction.  ECF

No. 512 ("Order").

I.      INTRODUCTION

MOSAID's principal objection to the Order concerns the construction of the "plurality of

signaling modes" claim phrases, the sole disputed issue in related United States Patents

6,563,786 and 6,992,972.  After resolving the parties' "primary dispute," the Magistrate Judge

went on to construe "signaling mode" to mean "an OFDM symbol transmission *at a symbol

rate*."  Order at 14, 17 (emphasis added).  This was error.  The phrase "symbol rate" is not found

*anywhere* in the patent specification and it was not included in any party's proposed

construction.  Although the Magistrate Judge's conclusion appears to be premised on the

statement that "[t]he specification also indicates that 'mode' refers to a symbol rate," the Order

does not provide any citation for that statement, and there can be no such citation given the

absence of the phrase "symbol rate" from the patent.

This error was compounded when the Magistrate Judge relied on the "symbol rate"

limitation to incorrectly conclude that an OFDM transmission of "a frame's preamble and its

payload" does not constitute "a plurality of signaling modes" because the preamble and payload

are at a single "symbol rate."  Order at 18.  The significance of this "preamble and its payload"

statement is unclear because it appears in the body of the Magistrate Judge's opinion but not the

actual claim construction, and neither party sought to incorporate either the word "preamble" or

"payload" into its proposed construction.  Further, the Order does not provide a basis for the

"preamble and its payload" restriction, and the patent uses neither the word "preamble" nor

1

"payload."  MOSAID accordingly requests that the Court strike the factual observation regarding the application of "preamble and its payload" to the "plurality of signaling modes" limitation.

MOSAID also objects to the constructions of "first receiving means" and "delaying transmission of a third data frame …," which are erroneous for the reasons discussed in Sections III(B)-(C), and raises certain other objections for the record, as explained in Section III(D).

## II.    LEGAL STANDARD

Parties may object to, and request reconsideration of, a Magistrate Judge's order determining a motion where the ruling is "clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); E.D.Tex. L.R. 72.  The "clearly erroneous" standard applies to factual findings, and it is satisfied "if the reviewing court is 'left with a definite and firm conviction that a mistake has been made.'" *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993) (quoting *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1174 (5th Cir. 1992)).  The "contrary to law" standard applies to legal conclusions, which are reviewed de novo.  *Alldread*, 988 F.2d at 1434.

## III.    ARGUMENT

### A.    The Court Should Modify The Magistrate Judge's Construction Of The "Plurality Of Signaling Modes" Terms Found In The '786 And '972 Patents[1]

The only disputed claim phrases in the '786 and '972 Patents are "plurality of signaling modes," and the two related phrases "first mode and a second mode" and "first mode and at least one second mode."  Order at 13.  MOSAID's proposed construction ("one of a plurality of OFDM transmission modes"), which was rejected by the Magistrate Judge, is the same construction previously adopted by another court.  *See Agere Systems Inc. v. Broadcom Corp.*, Civ. No. 03-cv-3138-BMS, 2004 U.S. Dist. LEXIS 14187, *39 (E.D. Pa. July 20, 2004); *see also*

---

[1] These terms are found in claims 1-3, 6, and 9 of the '786 Patent ("plurality of signaling modes"); claims 1, 11-12, and 14 of the '972 Patent ("first mode and a second mode"); and claims 11-16, and 19-35 of the '786 patent ("first mode and at least one second mode").

MOSAID's Op. Br. (ECF No. 459) at 4-5.  MOSAID objects to the Magistrate Judge's Order for two distinct reasons, as explained below.

**1.**  **The Order incorrectly includes in the claim construction a phrase ("at a symbol rate") that does not appear in the patent specification and was not included by any party in its proposed construction**

The phrase "at a symbol rate," which the Magistrate Judge included in the claim construction, was not proposed by any party.  *See* Order at 13-14 (showing parties' proposed constructions).  Instead, as stated in the Order, the parties' primary dispute was whether the claim terms, as requested by the Defendants, "require a mode at a 'fallback rate' so the claimed system can operate in 'varying communication environments.'"  *Id*. at 14.  The Magistrate Judge rejected Defendants' proposed "fallback rate" limitation as attempting to "read[] a limitation from the preferred embodiment into the claim," rejected Defendants' proposed inclusion of "for communicating OFDM symbols in varying communication environments" as "improperly vague," and concluded that "Defendants' proposed construction must be rejected."  *Id*. at 16.

The Magistrate Judge, however, proceeded to construe "signaling mode" to mean "an OFDM symbol transmission *at a symbol rate*."  *Id.* at 17 (emphasis added).  The Magistrate Judge erred by including in the construction the phrase "at a symbol rate"—a phrase not used anywhere in the '786 or '972 patent specifications.  It appears that the Magistrate Judge determined that "at a symbol rate" should be incorporated into the construction of the claim term "signaling mode" through the following analysis: (i) determining that "[t]he specification indicates that 'signaling' refers to an OFDM symbol transmission; and (ii) determining that "[t]he ***specification also indicates that 'mode' refers to a symbol rate***."  Order at 17 (emphasis added).  Part (ii) of this analysis is in error.  The patent never uses the phrase "symbol rate" and therefore does not indicate that "mode" refers to a symbol rate.  Nor does the Order provide any citation for the statement that "'mode' refers to a symbol rate."  *Id.*

3

To the extent that the Magistrate Judge's conclusion rests on the discussion regarding the "symbol period of duration KT" that precedes the Court's "symbol rate" conclusion, that is also incorrect.  The Order cites to the '786 patent, 1:61-64 and 3:49-53 as support for the "symbol period" having duration KT, but those passages do not refer to a "symbol period."  Order at 17.  The phrase "symbol period," in fact, is never used in the '786 patent.  Instead, the '786 patent states that KT is the duration of the *symbol*, not a "symbol period."  *See, e.g.,* '786 Patent at 4:55-56 (claim 1).  Moreover, to equate the duration of a "symbol period" to "KT" is factually incorrect because the symbol period never equals the duration of a symbol, except when the guard interval is neglected in the case when K is equal to 1.  Therefore, to the extent the Magistrate Judge equated a "symbol period" with a "symbol rate," it is unsupported.

There are no words of "manifest exclusion" in the patent specification justifying the inclusion of "at a symbol rate" in the construction of "signaling mode."  *E-Pass Techs., Inc. v. 3 Com Corp*., 343 F.3d 1364, 1369 (Fed. Cir. 2003).  MOSAID objects to the inclusion of "symbol rate" and respectfully requests that the Court remove the phrase from the claim construction.

### 2.    The Order relies on the incorrect inclusion of "at a symbol rate" to proffer an incorrect factual conclusion regarding "a frame's preamble and its payload" that is not part of the actual claim construction

At the end of the discussion regarding the '786 and '972 patents, the Magistrate Judge reached the apparent factual conclusion that an OFDM transmission of "a frame's preamble and its payload" does not constitute "a plurality of signaling modes" because "[b]oth the frame preamble and its payload would be in an OFDM transmission at a single symbol rate (i.e., one signaling mode)."  Order at 18.  This statement regarding a frame's "preamble and its payload" is not incorporated into the Magistrate Judge's claim construction, and therefore appears to be an opinion regarding the manner in which a claim construction may apply to a given factual scenario.  *See id.* at 45.  Regardless, MOSAID respectfully requests that the Court remove the

4

"preamble and payload" statement from the Order because it is erroneously included.

*First*, the Magistrate Judge's statement that an OFDM transmission of a frame's "preamble and its payload" does not constitute "a plurality of signaling modes" is expressly based on the incorrect inclusion of "at a symbol rate" in the "signaling mode" terms. *See id.* at 18 ("Both the frame preamble and its payload would be in an OFDM transmission *at a single symbol rate* (i.e., one signaling mode).") (emphasis added).  The inclusion of "symbol rate," which never appears in the patent, is thus incorrect for the reasons explained above in Section III(A)(1).  The "preamble and payload" statement should be stricken for this reason alone.

*Second*, even if the Court concludes that "at a symbol rate" is properly included in the claim construction, the Order's factual statement regarding a frame's "preamble and its payload" is nevertheless incorrect and should be removed.  The Magistrate Judge does not explain the basis for apparently determining that "an OFDM transmission of a frame's preamble and its payload do not constitute 'a plurality of signaling modes.'"  Order at 18.  Such a disclaimer did not come from the patentee because ***the patent never uses the word "preamble" or "payload,"*** nor does the patent define a "frame."  *See* '786 Patent.  As such, the patent specification does not use "words or expressions of manifest exclusion or restriction" that would be required to narrow the scope of a claim.  *E-Pass*, 343 F.3d at 1369.

Moreover, neither MOSAID nor Defendants proposed any "preamble" or "payload" restriction in their proposed claim constructions.  Order at 13-14.  The Magistrate Judge explained that the issue concerning the "preamble" and "payload" transmission was tied to Defendants' argument that the patentee allegedly disclaimed "frequency synchronization" when distinguishing the *Kishimoto* reference.  *See* Order at 15.  But the Magistrate Judge properly ***rejected*** Defendants' prosecution disclaimer argument and concluded that, "[c]ontrary to

Defendants' contention, the prosecution history remarks do not speak to 'signaling modes' in relation to 'frequency synchronization.'" *Id*. at 18.   There is no legitimate basis for the "preamble" and "payload" restrictions to be included in the Order.

Far from excluding changing the duration at an individual symbol level, the patent teaches the ability to do so.   For example, Figs. 1-2 illustrate the duration of an *individual symbol*, not the duration of every symbol in a transmission.   The duration of a symbol is determined by control block 4, which operates at the individual symbol level. '972 Pat. at *Fig*. 3 and 3:49-57.   Additionally, the patent explicitly provides that the control circuit "may be responsive to external settings," which means that the control circuit can change the duration of an individual symbol. *Id*. at 4:40-42.   And changing the duration of individual symbols has a concomitant effect on the rate of symbol transmission.   Therefore, to exclude such scope from construction of the "signaling mode" terms is erroneous.

As a result, the Order does not identify any support for the factual conclusion that an OFDM transmission of a frame's "preamble and its payload" does not constitute "a plurality of signaling modes."   The Order's reference to the potential factual application regarding the "preamble and payload" should be removed and left for determination, as necessary, on a proper factual record.   It is improper during claim construction to make assumptions about how a claim limitation may apply to details (including a "preamble and payload") of a potential accused product. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co*., 442 F.3d 1322, 1326-27 (Fed. Cir. 2006) ("a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process," even if it provides context for claim construction).   It is similarly improper to base a claim construction upon potential details of an actual product. *SRI Int'l v. Matsushita Elec. Corp. of A*m., 775 F.2d

1107, 1118 (Fed. Cir. 1985); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991).

MOSAID should be permitted to present an infringement case based on the application of the

claim construction, *i.e.*, as found in Exhibit A of the Order, to the details of accused products.[2]

> **B.  The Court Should Modify The Magistrate Judge's Construction Of "First [Second] Receiving Means" Because The Construction Misstates The Claimed Function ('920 Patent, claim 7)**

For means-plus-function phrases, it is "critical" to correctly identify the claimed function

in order to correctly identify the corresponding structure. *ACTV, Inc. v. Walt Disney Co.*, 346

F.3d 1082, 1087 (Fed. Cir. 2003).  The claim phrase at issue here is "first [second] receiving

means [] for receiving data [non-data] signals transmitted in said spread spectrum signal."  Order

at 22-23.  According to the Order's claim construction chart in Exhibit A, the Magistrate Judge

agreed with the parties that the claimed function is precisely what is recited in the claim:

"[r]eceiving data [non-data] signals transmitted in said spread spectrum signal." *Id.* at 45.

In the body of the Order, however, the Magistrate Judge applied a different function—

"detecting."  *Id.* at 24-25 ("the function is construed to mean 'detecting data signals transmitted

in said spread spectrum signal'").  *Id.* at 25.  Using this unsupported "detecting" function, which

is not recited in the claim term, the Magistrate Judge incorrectly determined that the DQPSK

---

[2] Defendants' products meet the "signaling mode" limitations under the Court's claim construction.  Defendants' accused products exploit the use of OFDM symbols having varying symbol durations.  *See* IEEE 802.11-2007 Specification, Fig. 17-2, at p. 599, attached hereto as Ex. 1.  As one example, just as required by the court's claim construction, the duration of the symbol defined by T1 and T2 for Accused Devices compliant with IEEE 802.11 a/g/ and/or n devices is twice that of the duration for the SIGNAL, Data 1 and Data 2 symbols for those same devices.  *See* Ex. 1 at Fig. 17-4, p. 600.  Accordingly, the "symbol rate" for the symbol defined by T1 and T2 for the Accused Devices is one half that of the symbol rate of the SIGNAL, Data 1, and Data 2 symbols.  Because these symbols are transmitted at two different "symbol rates," the Accused Devices meet the "signaling mode" terms under the court's claim construction.

receiver is corresponding structure, along with the correlator and converter.[3]  *Id.*  The inclusion

of the DQPSK receiver is in error.  As MOSAID explained in its brief, only the correlator and

converter are involved with the recited claim function of "[r]eceiving data [non-data] signals

*transmitted in said spread spectrum signal*."  Op. Br. at 8.  This is because the patent makes clear

that the correlators "'de-spread' the received spread spectrum signal." '920 at 4:63-64; Op. Br. at

8.  Because the signals that have passed through the correlator are no longer transmitted in a

spread spectrum signal, the structures downstream of the correlator, including the DQPSK

receiver 215, cannot be corresponding structure. '920 at Fig. 5; Op. Br. at 8.

The Magistrate Judge appears to generally agree with this proposition, stating, "The

output of converter 185, ***which represents the data signals transmitted in the spread spectrum***

***signal*** are applied to DQPSK receiver 215 'to finally recover the data.'"  Order at 26 (emphasis

added).  The Order thus acknowledges that, according to the patent, the data signals transmitted

in the spread spectrum signal are output from the converter.  *Id.  But that is precisely the claimed*

*function*.  The inquiry accordingly should end there—at the correlator and converter—and not

include other structure "downstream" from the converter, such as the DQPSK receiver, because

the claimed function does not recite "detecting," "recovering," "processing," or anything else

that would be deemed to include the DQPSK receiver.  The DQPSK receiver accordingly should

be removed from the listing of corresponding structure in the specification.

---

[3] The Order cites as support to the statement that "receiver 115 is capable of detecting the data and non-data signals which are received and which form the received frames of the information signals." '920 at 4:43-46.  The "detecting" statement is irrelevant because the recited function is "receiving," not "detecting."  *See ACTV*, 346 F.3d at 1087.  Indeed, the above quote refers to both "detecting" and "receiv[ing]," demonstrating those are two different and distinct functions.

**C.    The Court Should Modify The Magistrate Judge's Construction Of "Delaying Transmission Of A Third Data Frame From The First Station During A Second Time Period" Because The Construction Incorporates An Unnecessary Limitation ('887 Patent, claims 9-11)**

The Magistrate Judge construed the disputed claim phrase "delaying transmission of a third data frame from the first station during a second time period" to mean "delaying transmission of the third data frame for a second time period *after every transmission*."  Order at 43 (emphasis added).  This construction is in error because it inserts a phrase, "after every transmission," where there is no basis to do so.

The Magistrate Judge ruled that "'after every transmission' is an important and necessary aspect to realizing the objective of shared access of a WLAN," but did not provide a citation or identify any portion of the '887 Patent as support.  Order at 43.  The Defendants also did not identify any such language from the patent specification.  In their brief, Defendants used ellipses to make it appear as if the specification refers to "forcing a TxGAP silence period after every transmission" in the same sentence that begins with "[t]he intent of the invention," when it actually does not.  MOSAID Reply Claim Constr. Br. (ECF No. 491) at 9-10; Defndts. Resp. Claim Constr Br. (ECF No. 486) at 26; '887 Pat. at 9:62-67.  The patentee did not use words or expressions of manifest exclusion or restriction that would justify reading "after every transmission" into the claims.  *E-Pass*, 343 F.3d at 1369.[4]

Claim 9, the pertinent asserted claim, recites a method with three separate steps, but there is no requirement of delaying "after every transmission."  '887 Pat., claim 9.  The step being construed here, "delaying transmission of a third data frame from the first station during a second

---

[4] The preferred embodiment described in the specification does describe "forcing a TxGAP silence period after every transmission" ('887 at 9:65-67), but there is no mandate that it must always be the case.  *Phillips*, 415 F.3d at 1323 (warning that courts must "avoid the danger of reading limitations from the specification into the claim").

time period," *does* provide certain limitations as to the "second time period," in that it must be "greater than said first random time period" and must "begin[] at the point in time immediately after completion of transmission of the first data frame without collision," but notably absent is any requirement that the recited delay occur "after every transmission." *Id.* Given the lack of any reason to rewrite the claims to include an "after every transmission" limitation, MOSAID respectfully requests that the Court remove that phrase from the claim construction.

> **D.    MOSAID Objects To The Magistrate Judge's Construction Of Certain Other Claim Terms**

> **1.    "Non-data signal" ('920 Patent, claim 7)**

The parties' dispute is whether a non-data signal must have a different "spreading code" than a data signal. *See* Order at 19. The Magistrate Judge did not adopt either party's proffered construction, but construed non-data signal to mean "a signal that does not correlate with the same spreading code to which a data signal correlates." *Id.* at 22. MOSAID asserts that the Magistrate Judge erred by incorporating the "spreading code" limitation.

Neither the specification nor the claims require the use of different spreading codes to differentiate a non-data signal from a data signal. Op. Br. (ECF No. 459) at 6. Instead, the references to spreading codes are prefaced by language such as "one technique" that indicates a reference to a preferred embodiment. *See* Op. Br. at 6 (citing '920 Pat. at 7:16-20). The Order does not identify words or expressions of manifest exclusion that would so limit the claims. To the contrary, the Order supports the conclusion that spreading codes are used in a preferred embodiment, stating, "A physical appearance of 'orthogonality' between data signals and non-data signals is presented *in the preferred embodiment* by reversed spreading codes." Order at 21 (emphasis added). "Although the specification often describes very specific embodiments of the

invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*).

Further, although asserted claim 7 does not require a spreading code, claim 8 does require that the data signal is "spread by a first spreading code" and the non-data signal is "spread by a second spreading code."  Op. Br. at 7-8; *see SmartPhone Techs. LLC v. Research in Motion Corp.*, No. 6:10-CV-74, 2012 U.S. Dist. LEXIS 19242, at *4 (E.D. Tex. Feb. 13, 2012) ("[o]ther claims, asserted and unasserted" can provide instruction).  This claim differentiation argument is not discussed in the Order.  For these reasons, MOSAID objects to the Order and requests that the Court adopt MOSAID's proposed construction:  "A signal that can be distinguished from a data signal by its physical appearance."

### 2.      "Non-data signals being generally orthogonal to said data signals" ('920 Patent, claim 7)

The principal dispute is whether a "timing moment" limitation should be imported into the construction.  The Magistrate Judge did not adopt either party's proffered construction, but construed this term to mean "a dot product of vectors representing the data signals and vectors representing the non-data signals at each symbol timing moment is near zero.  *Id.* at 28. MOSAID asserts that the Magistrate Judge erred by incorporating a "timing moment" limitation.

As MOSAID stated in its claim construction briefing, neither the specification nor the claims require the use of "each timing moment" to determine the orthogonality of data and non-data signals. Op. Br. at 11-12.  Accordingly, the construction of this term is improper, and the Court should adopt MOSAID's proposed construction:  "Such that the correlation or crosstalk between the non-data signals and data signals is minimum, i.e., close to zero."

### 3.      "Spike quality determining means…" ('006 Patent, claims 1-2)

The function of this means-plus-function phrase, as agreed by the parties and adopted by

the Magistrate Judge, is "providing a quality value representative of said received signal."  Order at 30, 46.  The Magistrate Judge adopted the Defendants' identification of corresponding structure, which includes the "look up table" of Figure 5 and Table 1 and a "shifter circuit that shifts the input to the LUT by 0, 1, 2, 3, or 4 bit positions, depending on the input value."  *Id*. at 30.  MOSAID objects to the identification of corresponding structure because a look up table and shifter circuit is just an aspect of the preferred embodiment, and is simply one way to determine a quality value based on the maximum and total values.

The specification refers to a circuit that performs a spike quality determination by determining a maximum and total value and then outputting the "quality value."  *See id.* at 3:21-24. In one embodiment, as the maximum value increases relative to the total value, the quality is improved. *See, e.g.*, '006 Pat. at 7:37-39.  The exemplary look up table shown in Table 1 plots values corresponding to the maximum (peak) values on the horizontal axis and values corresponding to the total values on the vertical axis. '006 Pat. at 5:16-47.  Nothing in the specification, however, requires the use of a look up table, such as the table shown in Table 1, to determine a quality value based on the maximum and total values.  Op. Br. at 18.

For these reasons, MOSAID objects to the Order and requests that the Court adopt MOSAID's proposed construction:  "a circuit that determines and provides a value representative of the quality of the received signal using circuitry (such as a lookup table) configured to use the maximum or highest value and the total value of the signal, or equivalents."

### 4.    "Carrier detection means…" ('006 Patent, claims 1-2)

The function of this means-plus-function phrase is "providing a carrier detect signal." Order at 31, 46.  MOSAID objects to the Magistrate Judge's identification of corresponding structure because it would require that "a carrier detect signal has two states: carrier present and carrier absent."  *Id*. at 32.  The claimed function, however, is providing a carrier detect signal,

not a non-detect signal when the carrier is absent.  The Magistrate Judge's construction would incorrectly require structure to perform a function that is not recited by the claim.  *See Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001).  For these reasons, MOSAID objects to the Order and requests that the Court adopt MOSAID's proposed construction:  "A circuit that provides a carrier detect signal based on a predetermined threshold, or equivalents."

### 5.     "Determining a spike quality value…" ('006 Patent, claims 12-14)

The claim term "determining a spike quality value based on said peak value and said total value" uses clear language that does not need construction.  The Magistrate Judge construed this term to mean "determining a signal-to-noise ratio value for the communication channel based on said peak value and said total value."  Order at 34.  MOSAID agrees that one determines the pertinent value "based on" the peak value and total value.  However, the Magistrate Judge replaces "spike quality value"—the value that is being determined based on the peak value and total value—with "a signal-to-noise ratio value for the communication channel."  The Order does not identify any reason to substitute claim language in this manner,[5] and MOSAID believes that the claim construction does not serve to clarify any issues for the jury.

For these reasons, MOSAID objects to the Order and requests that the Court determine that no claim construction is required, or adopt MOSAID's proposed construction: "Determining a value representing the spike quality of a sampled signal, the determination being based on the peak value and total value of the sampled signal"."

---

[5] The specification never uses the phrase "signal-to-noise ratio value for the communication channel," and the signal quality is not based solely on signal to noise ratio:  "The described embodiment provides a fast and reliable antenna selection based on an appropriate quality measurement for the reliability of data transmission which depends on relevant receive conditions such as signal to noise ratio, signal to interference ratio and channel distortion."  '006 Pat. at 10:14-19.

**6.      "Means for broadcasting. . ." ('887 Patent, claims 1 and 7)**

MOSAID objects to the Magistrate Judge's adoption of the Defendants' proposed identification of structure for this means-plus-function term.   Order at 37-38.   First, the specification does not describe the antenna as structure required for broadcasting data frames, which is the recited function. While the antenna may increase the range (distance) over which a broadcast is made and decrease the error rate associated with a transmission, it nonetheless is not required for the broadcast itself.  *See* '887 Pat. at 3:20-24.

Second, the Magistrate Judge identifies a CSMA/CD protocol LAN controller as the pertinent controller.  Neither the claims nor the specification restrict the LAN controller to the CSMA/CD protocol.  Moreover, the specification describes that the CSMA/CD protocol is for preventing transmission, not enabling it. '887 Pat. at 4:16-17 ("[W]here used in a wired LAN utilizing the CSMA/CD protocol, the controller constantly monitors link activity. Whenever it senses a carrier signal on the link, the controller *will not pass a data frame* by deferring any pending transmission.") (emphasis added).  MOSAID objects to the Order and requests that the Court adopt MOSAID's proposed construction:  "LAN controller, transceiver and equivalents."

**7.      "Means for deferring, during a predetermined time period" ('887 Patent, claims 1 and 7)**

MOSAID and Defendants agreed that the corresponding structure of this means-plus-function term should be a LAN controller, but disagreed as to whether a specific algorithm should be included as part of the structure.  Order at 39.   The Magistrate Judge adopted Defendants' proposed construction, including the reference to the specific algorithm.  *Id.* at 39-40.  MOSAID objects because the recited function does not require using a specific formula. Rather, the function requires merely "deferring, during a predetermined time period," and the LAN controller does so by generating a deferral time called "TxGAP," in addition to waiting the

14

standard "IFS" period. '877 Pat. at 9:21-26. The deferral time may be generated in a specific fashion—the actual formula disclosed for determining a maximum backoff time and executing a number of NOPs—but that does not make those implementation details part of the disclosed structure. *See, e.g., Sipco, LLC v. Abb, Inc.*, No. 6:11-CV-0048 2012 U.S. Dist. LEXIS 106659 at \*87-\*96 (E.D. Tex. July 30, 2012) ("site controller" structure did not trigger algorithm requirement of *WMS Gaming*). For these reasons, MOSAID objects to the Order and requests that the Court adopt MOSAID's proposed construction: "LAN Controller and equivalents."

### 8. <u>"Means for deferring broadcast of a third frame of information. . ."</u><br><u>('887 Patent, claims 1, 4, and 7-8)</u>

The parties agreed that the corresponding structure for this means-plus-function limitation should be a LAN Controller and signal generator circuit. However, the Magistrate Judge adopted the Defendants' construction requiring the LAN controller and signal generator circuit to be the exact controller and signal generator disclosed in Figs. 2, 3A, and 3B, and that the LAN Controller must be suitable for the CSMA/CD protocol. Order at 40-41.

MOSAID objects because the exact details shown in Figures 2, 3A, and 3B (including the exact circuit structure shown in these figures) are not necessary for performing the recited deferral function. For example, in relation to those figures, the patent describes the "Operation of a Station" and the "characteristics of a wireless LAN"—not just the "signal generator circuit." '887 Pat. at 7:27-8:42, 7:45-8:25. The operation of a workstation and the LAN characteristics are not limited to the deferral function. Accordingly, the structure described for the above-cited Figures performs many functions in addition to deferring. *See Asyst,* 268 F.3d at 1370. Further, the invention is not limited to the CSMA/CD protocol for reasons already noted.

For these reasons, MOSAID objects to the Order and requests that the Court adopt MOSAID's proposed construction: "LAN Controller, signal generator circuit."

DATED:  May 9, 2013

                                             Respectfully submitted,

                 By: _ */s/ Theodore Stevenson, III* _
                    THEODORE STEVENSON, III, LEAD ATTORNEY
                      Texas State Bar No. 19196650
                      tstevenson@mckoolsmith.com
                    DAVID SOCHIA
                      Texas State Bar No. 00797470
                      dsochia@mckoolsmith.com
                    STEVEN CALLAHAN
                      Texas State Bar No. 24053122
                      scallahan@mckoolsmith.com
                    **MCKOOL SMITH, P.C.**
                    300 Crescent Court, Suite 1500
                    Dallas, Texas 75201
                    Telephone: (214) 978-4000
                    Telecopier: (214) 978-4044

                    JOHN M. SHUMAKER
                      Texas State Bar No. 24033069
                      jshumaker@mckoolsmith.com
                    **MCKOOL SMITH, P.C.**
                    300 W. 6th Street, Suite 1700
                    Austin, Texas 78701
                    Telephone: (512) 692-8700
                    Telecopier: (512) 692-8744

                    SAMUEL F. BAXTER
                      Texas State Bar No. 01938000
                      sbaxter@mckoolsmith.com
                    **MCKOOL SMITH, P.C.**
                    104 East Houston, Suite 300
                    Marshall, Texas 75670
                    Telephone: (903) 923-9001
                    Telecopier: (903) 927-2622

                    *Counsel for Plaintiff MOSAID Technologies Incorporated*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 9, 2013.  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).

By: */s/ John Shumaker*
JOHN SHUMAKER